THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant, *v.* HANNAH A. KELLY, as Administratrix, etc., Impleaded, etc., Respondent.

The sureties to a bond, given by one appointed to a position in a public office, for the faithful discharge of his duties, are not discharged by the imposition of new duties, which are distinct and separable from those protected by the bond, unless they render impossible, or materially hinder or impede, the proper and just performance of the duties so guaranteed;

and this, although the new duties so imposed expose the principal to temptation, and give broader opportunity for dishonesty.

Upon the appointment of B. as book-keeper in the department of docks, in the city of New York, he gave a bond with two sureties in the penal sum of $5,000, conditioned that he would "truly and faithfully perform the duties that may be legally required of him * * * during his continuance in the office." B. was required to assist the treasurer in receiving and depositing, to the credit of the treasurer, the funds of the department. He embezzled, at various times, moneys of the department, amounting in all to over $40,000, and to conceal this, made false entries of deposits in the books, or omitted to make any entries of receipts. In an action upon the bond it was not claimed that the additional duties in any manner impeded or hindered the faithful performance of the duties of book-keeper. The complaint was dismissed on trial. *Held* error; that conceding B. could not be held liable, as book-keeper, for the whole amount embezzled (as to which *quære*), as there was a clear breach of the condition of the bond, the amount of damages resulting therefrom was a question of fact for the jury, and might reasonably have been found to have at least equaled the penalty.

*People* v. *Pennock* (60 N. Y. 421); *Ward* v. *Stahl* (81 id. 406); *People* v. *Vilas* (36 id. 459), distinguished.

*1st trial 17 N.Y. App.* (illegible)

(Argued March 2, 1885 ; decided March 17, 1885.)

APPEAL from judgment of the General Term of the Court of Common Pleas, in and for the city and county of New York, entered upon an order made November 5, 1884, which affirmed a judgment in favor of defendant Kelly, entered upon an order dismissing the complaint on trial.

This action was a bond given by William W. Burnham upon his appointment as book-keeper in the department of docks in the city of New York.

The facts, so far as material, are stated in the opinion.

*D. J. Dean* for appellant. The performance of the duty of receiving money by the book-keeper, by the direction or permission of the dock commissioners, was no extension of the risk undertaken by the sureties. (*Minor* v. *Mechanics' Bk.*, 1 Peters, 46.) The position to which Burnham was appointed was a public office. (*Rowland* v. *Mayor, etc.*, 83 N. Y. 372.) The imposition of new duties upon such an officer does not discharge the sureties upon his official bond. (*People* v. *Vilas*,

36 N. Y. 459; *White* v. *Fox,* 9 Shepley, 341; *People* v. *Mc-Hatton,* 2 Gilmore, 216; *Kindle* v. *State,* 7 Black, 586; *Supervisors of Monroe* v. *Clark,* 92 N. Y. 395; *Ganson* v. *United States,* 2 U. S. 584; *Commonwealth* v. *Holmes,* 25 Gratt. 771; *Hatch* v. *Attleboro,* 97 Mass. 533; *U. S.* v. *Kilpatrick,* 9 Wheat. 720; *White* v. *Fox,* 9 Shepley, 341; *Colter* v. *Morgan,* 12 B. Monr. 278; *Rochester City .Bk.* v. *Elwood,* 21 N. Y. 88; *German Am. Bk.* v. *Auth,* 87 Penn. St. 416.)

*Wallace Macfarlane* for respondent. The imposition of the new duties upon Burnham, or the acquiescence of the board in his voluntary performance of them as a regular and continuous part of his own duties, was tantamount to appointing him to the office of treasurer, and a new contract was made between the obligees and the principal, to which the sureties are not parties. (*Supervisors* v. *Pennock,* 60 N. Y. 426; *Miller* v. *Stewart,* 9 Wheat. 680; *Nat. Bk. Asso.* v. *Conkling,* 90 N. Y. 116; *Ward* v. *Stahl,* 81 id. 406; *Ludlow* v. *Simonds,* 2 Cai. Cas. 1, 29, 30, 35; *U. S.* v. *Hillegas,* 3 Wash. C. C. 76; De Colyar on Guar. 268; *Bonar* v. *McDonald,* 3 H. L. Cas. 226; *People* v. *Vilas,* 36 N. Y. 459; *State* v. *Armstrong,* 40 Mo. 209.) The clause in by-law seven, "the book-keeper shall perform such other duties as may be prescribed by the board from time to time," does not relieve the board from the effect of their acquiescence in Burnham's performance of the duties of treasurer, or render the sureties liable. (*People* v. *Pennock,* 60 N. Y. 426; *Minor* v. *Mechanics' Bk.,* 1 Pet. 46; Broom's Legal Maxims, 646; *Nat. Bk. Ass'n* v. *Conkling,* 90 N. Y. 116.) Burnham was not a public officer in the sense in which that term is used in *People* v. *Vilas* (36 N. Y. 459) and *Supervisors* v. *Clark* (92 id. 390). Additional duties imposed on a public officer, even by the legislature, must not change the general nature or functions of the office if the surety is not to be discharged. (36 N. Y. 463, 467; 92 id. 394, 395.)

FINCH, J. The sureties who defend, resist the action brought upon their bond, with proof which they claim establishes that

their principal, in addition to the duties of book-keeper, was required to perform, and did continuously perform, the duties of treasurer of the department of docks; so that, besides keeping the accounts, which was his specific duty, he was intrusted with the public money, and exposed to risks and temptations not contemplated by his bondsmen. The defense founded upon this fact assumed two forms, expressed in the separate grounds upon which a motion for the dismissal of the complaint was based. It was claimed, first, that the added employment was an extension of the risk and liability of the sureties which discharged them at once and entirely; and, second, that if not so discharged, and remaining liable for Burnham's false book-keeping, the breach created by his fraudulent entries was merely technical, and the injury flowed from an embezzlement, not protected by the bond.

The sureties are never discharged by the imposition of new duties which are distinct and separable from those protected by the guaranty, unless such new employment renders impossible, or materially hinders or impedes the proper and just performance of the duties guaranteed. Where the new employment is separate and distinct, and in no respect essentially interferes with the duty covered by the bond, the imposition of such added duty is wholly a matter between the employer and servant with which the sureties have no concern. For misconduct as to the new employment, the bondsmen are in no manner responsible, and have no right to complain so long as the added and separable duties do not prevent or tend to prevent the proper and just performance of those which are guaranteed. In such a case, if misconduct occurs, the sole question is whether it was a violation of the duties guaranteed, or of those outside of the bond and its protection. Ordinarily, that proves to be the only inquiry; and in all the cases cited by the respondent was the substantial point of investigation. Thus in *Nat. Mech. B'k'g Ass'n* v. *Conkling* (90 N. Y. 116), to which our attention is especially called, the book-keeper had been promoted to the office of teller. When we held that the guaranty related wholly to the duties of book-keeper, and such others as

might be temporarily added while he remained such, it followed that his promotion to a new office terminated his duties as book-keeper, and so ended his responsibilities in that character, and of course the liability of his sureties, while as to his new and separate duties, the sureties had made no contract.    If in that case he had remained book-keeper, the liability of the sureties as to that office would have continued, although the duties of a teller had been added to it, (*Rochester City Bank* v. *Elwood*, 21 N. Y. 88), unless it further appeared that his failure to keep correct accounts was naturally and necessarily occasioned by the pressure or interference of his new duties.    That the latter exposed him to temptation, or gave broader opportunity for dishonesty, is immaterial.    For it is the very substance of the contract of the sureties, that as book-keeper, he will be honest and faithful whatever temptation may approach.   ·  By their bond they vouch for his integrity, and invite the employer to repose trust and confidence.    They know that the book-keeper is to be introduced into the office and the business; that the whole range of the employer's transactions must come under the servant's observation, and · be intrusted to his silent fidelity; and that out of the situation will necessarily arise unfore-seen opportunities and temptations.    It is of no consequence how many or what, so long as they in no respect become part of, or hinder or prevent his guaranteed duty, or the preservation of his guaranteed integrity in rendering the services covered by the contract.    If that were not so, proof that the money-drawer in the book-keeper's room was left unlocked and often unwatched, or the combination of the safe was disclosed to him, might serve as a defense against dishonestly kept accounts.    In *People* v. *Pennock*, (60 N. Y. 426), the sole question considered was whether the sureties upon a super-visor's bond were liable for his default as to moneys which he was not authorized to receive in his official capacity.    The board of supervisors had directed certain moneys to be paid to him, and which were so paid without legal · authority, and this court held that as to such sums, his default was not within the condition of the bond.    The decision went wholly upon

that ground, without even a hint that the imposition of the new duty discharged the real and existing liability of his sureties for his official acts. In *Ward* v. *Stahl*, (81 N. Y. 406), the question again was upon the construction of the bond, and whether it covered any thing more than the collection of village taxes. In *People* v. *Vilas*, (36 N. Y. 460), the rule as to private parties and the ground upon which it rests is thus stated : " Any alteration in the obligation or contract in respect of which a person has become surety without consent of the latter, extinguishes his obligation. The reason upon which the rule is founded is, that the surety has never made the contract upon which it is sought to charge him." In all these cases, the question hinged upon the construction of the bond. If the employer has not materially altered the employment guaranteed ; if that remains as contemplated by the contract ; it is no defense of faithlessness in that, to say that employer and servant have contracted in addition for new services with which the sureties had no concern, and which did not in their nature interfere with or injuriously affect the services guaranteed.

It is not here pretended that the additional duties imposed upon Burnham of receiving and depositing the funds of the department were of a nature to prevent or in any manner impede or hinder his faithful performance of the duties of book-keeper. It may correctly be said that it furnished him greater opportunity for embezzlement and so put temptation in his way. But precisely that suggestion was overruled in *Rochester City Bank* v. *Elwood* (*supra*). There the bond was given for the faithful discharge by the principal of the trust reposed in him as assistant book-keeper of the bank. In consequence of the absence of the cashier and the duties of the teller having become more onerous, the assistant book-keeper was required to assist the teller in keeping the credit journal. Availing himself of that opportunity Gold credited a deposit of $1625 as $625, and embezzled $1000 of it. The court conceded that by this added duty imposed upon the book-keeper the latter was " better able " to cover up an embezzlement and conceal it from detection. There was thus opportunity and temptation

resulting from the new duty ; but it was held that the true interpretation of the bond extended to Gold's honesty in his position, the court saying that " the contract did not define the trust reposed, but indicated the department of duty to be assigned and guaranteed that the appointee was a trustworthy person to be introduced into the bank to discharge that duty."

The sureties were held liable. The new opportunity for wrong-doing furnished by the new action of the employer was not permitted to operate as a defense. If the rule were otherwise it would compel the employer to put no confidence in the honesty of the book-keeper, and sedulously guard his money and valuables against any opportunity for embezzlement. The true question thus is, was the loss inflicted upon the employer within the condition of the bond, and the contract of the sureties, or in other words, was the contract essentially altered or modified. The bond recited that Burnham had been appointed to the office of book-keeper of the department of docks, and was conditioned that he should " in all things well, truly and faithfully perform the duties that may be legally required of him to perform and do during his continuance in the said office of book-keeper of the department of docks." If this condition, which is very broad in its terms, is narrowed by the recital, and limited to the duties of book-keeper simply, the facts show that those duties were not faithfully performed. Burnham not only embezzled the money of the department, but made false entries of deposits in the books, and omitted to make entries of receipts which should have been made, and all this purposely and with a view to conceal his wrong.

There was thus a breach of his bond. His duties as book-keeper were never terminated by promotion or change to a new or different office, nor were they in any respect altered or modified by the imposition of the entirely distinct and separate duties as to which the sureties were not bound. The respondent argues that while Burnham was not promoted to the office of treasurer he was in fact made treasurer by the act of the department. Even so much cannot justly be said. It was the duty and authority of the treasurer to receive and disburse the

funds. No authority was given to Burnham to disburse a dollar. The money paid went to the credit of the treasurer and remained within his control. None of it could go to the credit of Burnham except as he stole and concealed it. His duties were merely clerical in the receipt and deposit of moneys and as an assistant to the treasurer, and his services were temporary in the sense that they could be dispensed with at any moment and were wholly within the control of the treasurer. So that his duty as book-keeper remained and was not terminated, nor was it at any time essentially or necessarily altered or modified.

That duty, it is conceded, was willfully and fraudulently violated ; but it is said, as the second ground of defense, that the breach was purely technical ; that the loss resulted wholly from the embezzlement against which the sureties had not contracted; and so that only nominal damages could be recovered. Precisely the same contention was urged in the *Elwood Case* (*supra*) and overruled. The court there said that, " where a person is introduced into and employed by a bank to assist in keeping its books, and avails himself of his situation to defraud his employers, the surety who has vouched for his honesty should answer for any loss accruing from his fraudulent or criminal conduct. Irrespective, therefore, of false entries, the abstraction of the money by Gold would render the surety liable for the loss. But more especially would he be liable if the false entries were concurrent and simultaneous, and each a part of the *res gestœ* of guilt." That doctrine thus declared would make Burnham liable as book-keeper for the embezzlement. But the present case does not require that we should go so far, or follow the doctrine stated to its full extent, for here the amount of damages resulting from the conceded breach was a question for the jury, and might reasonably have been found by them upon the facts to have at least equaled the penalty of the bond. That penalty was $5,000. The total defalcation of Burnham exceeded $40,000. The embezzlements were between 1875 and 1878, or through a period of about three years. During the last eleven months of the time the books were not written

up at all, and in that period Burnham's thefts reached $11,000. The largest single item which the evidence shows to have been stolen is less than $2,400.   So that it is quite apparent that a jury might justly trace to the system of false or omitted accounts, a loss of more than the penalty of the bond.   If Burnham had simply stolen the funds from time to time, but had not falsified the accounts, a jury might well conclude that the robbery would have been promptly discovered, and much more than $5,000 of it have been prevented.   The court, therefore, should have held the defendants liable for a breach of the bond in the failure of their principal to faithfully perform his duty as book-keeper, and submitted to the jury the question of damages resulting from that breach.

The judgment should be reversed, and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.