(76 South. 103)

ALABAMA FIDELITY & CASUALTY CO. v. ALABAMA PENNY SAV. BANK.
(2 Div. 598.)

(Supreme Court of Alabama.    Jan. 18, 1917.
On Rehearing, June 7, 1917.)

1. INSURANCE ⊚⇒640(2)—FIDELITY BOND—PLEADING—PLEA.

In an action on a fidelity bond, defendant's plea that the employé had been guilty before the execution of the bond of acts of dishonesty amounting to embezzlement which were known, or ought to have been known, by the officers of the bank, and that the bank retained him in its employ, did not, in violation of its duty, disclose to the defendant the facts of the employé's dishonesty, etc., was rendered seriously defective by the interpolation of the alternative averment, "or ought to have been known."

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1617, 1618.]

2. INSURANCE ⊚⇒285—FIDELITY BOND—DISCHARGE OF INDEMNITOR—KNOWLEDGE OF PRIOR INFIDELITY.

When an employer has knowledge of previous dishonesty of an employé and accepts the assurance of an indemnitor of the employé's future fidelity without disclosing such knowledge to the innocent indemnitor, a fraud is committed against the indemnitor, and he is not bound, but this doctrine is predicated of knowledge only, and not upon failure or omission to gain knowledge since notice is not the equivalent of knowledge.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 657.]

3. INSURANCE ⊚⇒640(2)—FIDELITY BOND—PLEA—SUFFICIENCY.

A plea that before the indemnity was given the employé "was short in his accounts," and that "some of the officers of the state bank had notice or knowledge that he was short in his accounts prior to the execution of the bond," and that in violation of his duty the bank failed to disclose the fact of such shortage to defendant, etc., did not charge dishonesty in the premises, there being no allegation that he was short in respect to funds or other values to which he had access, or with reference to the care of which he had duties.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1617, 1618.]

4. INSURANCE ⊚⇒640(2)—FIDELITY BOND—PLEA—SUFFICIENCY.

The doctrine of holding the nonliability of the indemnitor for infidelity in a different office or position from those in which fidelity is assured is without application to the inquiry raised upon the sufficiency of pleas that the employé whose fidelity was assured as teller was permitted to discharge the duties of cashier and have control of and handle the assets of the bank beyond those powers usually conferred upon tellers without accounting to the cashier, etc., and that he was permitted to discharge the duties of cashier notwithstanding the employer had a cashier, but which did not assert that he was made cashier, or that the infidelity declared for was by the employé while serving as cashier.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1617, 1618.]

5. INSURANCE ⊚⇒640(2)—FIDELITY BOND—PLEA—SUFFICIENCY.

The averment of a plea that the employer had a cashier and a paying and receiving teller, the subject of indemnity, was not the equivalent of an allegation that the employer assumed an obligation to provide a cashier, or that the employer represented, to induce the indemnity, that it would have the services of a cashier during the life of the indemnity.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1617, 1618.]

6. INSURANCE ⊚⇒640(2)—FIDELITY BOND—PLEA—SUFFICIENCY.

Pleas that the employé whose fidelity was assured as paying and receiving teller was allowed to act as cashier without the consent of the indemnitor to the consequent enhancement of the indemnitor's risk through the added temptation to and opportunity for dishonesty by the employé arising from the wider powers allowed him in performing duties not usually attaching to the office of paying and receiving teller, to be perfected as defenses under their theory, must carry the averment that the added duties were such that their performance materially interfered with the discharge by the employé of the duties dishonestly breached by him in his capacity as such teller.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1617, 1618.]

7. INSURANCE ⊚⇒285—FIDELITY BOND—EFFECT OF ADDED DUTIES.

The fact that because of added duties as cashier a paying and receiving teller was subject to greater temptation to dishonesty is immaterial to the question of the liability of his indemnitor to his employer for dishonesty in his capacity as such teller.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 657.]

8. INSURANCE ⊚⇒640(2)—PLEA—SUFFICIENCY.

Where an indemnity bond provided that it should become void from beginning if the employer should at any time condone any fraudu-

lent or dishonest act of the employé which would give the employer the right to make a claim for the bond and shall continue the employé in its service without written application to the indemnitor, in order to avail of the forfeiture, it was necessary for the indemnitor to aver that the employer condoned a defined act of the employé, and also continued the employé in its service without written notification to the indemnitor.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1617, 1618.]

**9. INSURANCE ⬅640(2) — ACTION — PLEA — DEMURRER.**

Under a provision in an indemnity bond providing for forfeiture for condonation by the employer of a dishonest act of the employé and continuance of the employment without written notification to the company, a plea that one of the employer's officers had in the line of his duties discovered defalcations on the part of the employé amounting to embezzlement or larceny while discharging the duties of paying and receiving teller and during currency of the bond, and that plaintiff and all its officers failed to give notice to the indemnitor of such defalcations, but retained the employé in its service, etc., is objectionable on demurrer, in that it does not appear that the employer condoned the alleged criminal act, or that the officers or agents who knew of it were authorized or empowered to effect such condonation.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1617, 1618.]

**10. INDEMNITY ⬅6 — CONSTRUCTION — INDEMNITY BOND.**

In the interpretation or construction of contracts of indemnity, all fair doubts are to be resolved in favor of the party indemnified, as is the practice in interpreting and construing contracts of insurance.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 7, 9, 18, 19.]

**11. INSURANCE ⬅285 — CONSTRUCTION OF CONTRACT—STATEMENTS OF EMPLOYER.**

Where in the body of an indemnity bond succeeding the recital of a consideration moving to the indemnitor it is stated that the obligations assumed by the indemnitor were "accepted upon the faith of the said statements as aforesaid by the employer," such statements were not thereby made a part of the contract.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 657.]

**12. INSURANCE ⬅646(2)—FIDELITY BOND—EVIDENCE—BURDEN OF PROOF.**

Where alleged "statements" made by employer alluded to in an indemnity bond, but not thereby made a part thereof, were in the possession of the indemnitor, if such statements bore representations or warranties the falsity of which would exempt the indemnitor from liability, it was the indemnitor's duty to assert a defense or defenses thus and thereby afforded; and hence there is no merit in the indemnitor's contention that the employer fell short of discharging its burden of proof by omitting to offer the statements in evidence.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1650-1652, 1654-1656.]

**13. INSURANCE ⬅646(2) — EVIDENCE—BURDEN OF PROOF.**

If an indemnity bond had expressly defined the nature and extent and particulars of the indemnity given by reference to alleged "statements" made by employer alluded to in the bond, it would have been the initial duty of the employer in a suit upon the bond to produce them in disclosing all of the terms and conditions of the contract.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1650-1652, 1654-1656.]

**14. INSURANCE ⬅646(2)—FIDELITY BOND—ACTIONS—BURDEN OF PROOF.**

The burden of proof was on plaintiff to show acts of embezzlement by the employé within the indemnity given by the defendant.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1650-1652, 1654-1656.]

**15. APPEAL AND ERROR ⬅970(2)—EVIDENCE ⬅187 — BEST EVIDENCE — DISCRETION OF COURT.**

When the rule, that unless rationally impossible the best evidence bearing immediately upon the fact in issue is alone admissible, should be relaxed to promote the administration of justice, is a matter of judicial discretion, for the abuse of which only will the appellate court review the trial court's action in the premises.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3850; Evidence, Cent. Dig. §§ 674, 675.]

**16. INSURANCE ⬅508½, New, vol. 4 Key-No. Series—FIDELITY BOND—CONSTRUCTION OF CONTRACT.**

A bond assuring the fidelity of a paying and receiving teller in a bank did not restrict the scope and effect of its obligation to criminal breaches of those particular duties, but comprehended the assurance that the employé would not prove dishonest within the definition of the instrument in relations and under circumstances which his position and duties as paying and receiving teller afforded him to gain possession of and to embezzle the funds of his employer, and hence the indemnitor was liable for the loss of funds procured by the employé by signing checks as "cashier."

**17. INSURANCE ⬅655(3)—FIDELITY BOND—EVIDENCE—ADMISSIBILITY—CHECKS.**

It was not error to receive in evidence the checks signed by the teller as "cashier."

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1677.]

**18. INSURANCE ⬅508½, New, vol. 4 Key-No. Series—FIDELITY BOND—ACTIONS—COMPUTATION OF AMOUNT OF LIABILITY.**

The amount represented by the employé's shortage and properly reported to the indemnitor could not be reduced by the amount representing a recovery by the bank of a portion of an amount subsequently taken, which was not within the assurance because of the bank's failure to immediately notify the indemnitor upon knowledge of its loss.

**19. INSURANCE ⬅508½, New, vol. 4 Key-No. Series—FIDELITY BOND—AMOUNT OF LIABILITY—DEDUCTIONS.**

From the employé's shortage existing and known at the time of notification to the indemnitor the trial court properly deducted an amount subsequently recovered from the resources of the employé.

**20. APPEAL AND ERROR ⬅1054(1)—REVIEW —PREJUDICIAL ERROR.**

The admission of evidence with respect to the custom prevailing in banks of the type in question to have only one active man in its service, although unnecessary, was not prejudicial to the defendant in a trial without a jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4185.]

---

On Rehearing.

21. INSURANCE ⬗616 — FIDELITY BOND — LIABILITY OF INDEMNITOR.

The fact that a bank had an enforceable claim against a second bank for sums deducted from the first bank's account on checks drawn upon the account by the first bank's teller as "cashier" when he was not such cashier is immaterial and without effect to qualify the contractual right of the first bank to enforce a bond assuring the fidelity of such teller.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1531.]

22. INSURANCE ⬗555 — FIDELITY BOND — NOTICE TO INDEMNITOR.

A second notice of claim under an indemnity bond was not effective to contradict or waive the aggregate of the net sum asserted to have been lost in a first notice and in the complaint in an action on the bond, particularly where the second notice was supplemental to the first notice.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1367–1373, 1382–1390.]

23. EVIDENCE ⬗177—DOCUMENTARY EVIDENCE—NEGATIVE TESTIMONY—BOOKS OF ACCOUNT.

An auditor who examined the books of the bank was properly permitted to testify that certain specific amounts of money alleged to have been embezzled by the employé were not noted or accounted for on the books, where the volume of the books was such that an examination thereof could not be conveniently made in court and it was shown affirmatively that the employé's duties included the duty to make and keep records from which the bookkeeper would transfer the entries to the more permanent books used to perpetuate the bank's daily operations.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 557, 570–579.]

24. EVIDENCE ⬗371—DOCUMENTARY EVIDENCE—BOOKS OF ACCOUNT.

Where it appeared that records to be made by the bookkeeper would be taken from the original records made by the teller in the discharge of his duties, the books regularly kept by the bookkeeper, presumptively correctly, were admissible, though in a sense collateral to the particular inquiry of the employé's infidelity in the premises, without showing that they were kept by or under the direction of the teller, or that they were correctly kept.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1580.]

25. INSURANCE ⬗550—ACTIONS—EVIDENCE—RECITAL IN NOTICE OF LOSS.

A recital in supplemental statement of loss that a stated sum recovered was of a particular sum extracted was some evidence of the fact it affirmed, and, no objection to it or effort to limit it being made or interposed, was to be considered by the court as evidence of the fact it purported to recite.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1337, 1359–1361.]

Appeal from City Court of Selma; J. W. Mabry, Judge.

Action by the Alabama Penny Savings Bank against the Alabama Fidelity & Casualty Company. Judgment for plaintiff, and defendant appeals. Affirmed.

John R. Tyson, of Montgomery, for appellant. Mallory & Mallory, of Selma, for appellee.

McCLELLAN, J. This is an action, instituted by the appellee against the appellant, to recover on an instrument executed by the appellant to the appellee, indemnifying, under conditions defined, the appellee for one year beginning the 30th of July, 1912, against pecuniary loss, to the extent of $5,-000, the appellee might sustain during that period "by reason of any fraudulent or, dishonest acts" of one Hunter "amounting to embezzlement or larceny" in connection with the duties of said Hunter as paying and receiving teller of the employing bank, the appellee. The defenses interposed were stated in a large number of original and amended pleas; the rulings on some only of which are brought into question and under review. The trial was by the court without jury, and plaintiff was given judgment for $5,700.

[1] The first assignment of error pressed in brief for appellant complains of the action of the court in sustaining demurrer to original plea 2. Its theory was that the employé had been guilty, *before the execution of this bond*, of acts of dishonesty amounting to embezzlement, which were "known, *or ought to have been known*, to the officers of the bank" (italics supplied), and that the bank retained him in its employ and did not, in violation of the bank's duty, disclose to the defendant the facts of this employé's dishonesty; whereas, if such disclosure had been made, the defendant would not have executed the bond sued on.

Aside from the probable fault inhering in the plea's failure to set forth the facts which the pleader characterizes as acts of dishonesty amounting to embezzlement, the plea was rendered seriously defective by the interpolation of the alternative averment, italicized in the above quotation from the plea.

[2] When an employer has knowledge of previous dishonesty of an employé and accepts the assurance of an indemnitor of the employé's future fidelity in the employer's service, without disclosing such knowledge to the innocent indemnitor, a fraud is committed against the indemnitor, and he is not bound. Saint v. Wheeler, 95 Ala. 362, 381, 10 South. 539, 36 Am. St. Rep. 210; London Gen. Omnibus Co. v. Holloway, 23 Ann. Cas. 1280, and notes at pages 1286, 1287. This wholesome doctrine is predicated of knowledge only, not upon a failure or omission to gain knowledge where that could have been acquired by inquiry or investigation; and so, even though the employer had notice of facts which, if diligently followed up, would have brought knowledge of acts of dishonesty on the part of his retained employé, since notice is not the equivalent of knowledge. Osborn v. Ala. S. & W. Co., 135 Ala. 571, 577, 33 South. 687.

[3] Like considerations justified the trial court in sustaining the demurrer to amended

plea 5, which charged, in substance, that, before the indemnity was given, the employé "was short in his accounts," that "some of the officers of the said bank had notice or knowledge that he was short in his accounts prior to the execution of the bond sued upon," and that, in violation of its duty, the bank failed to disclose the fact of such shortage to the defendant at or prior to the execution of the bond. Since one obliged by his duties to keep records of daily transactions in a bank may be short in his accounts in consequence of innocent mistake, not the product of dishonest purpose, it cannot be affirmed that the averments quoted from amended plea 5 were effective to charge dishonesty in the premises; there being no allegation that he was short in respect of funds or other values to which he had access or with reference to the care of which he had duties.

The complaint, in its three counts, declares upon a liability of the defendant attributable to the infidelity of Hunter in connection with his duties as paying and receiving teller of the plaintiff. Original plea 11 would avoid the defendant's liability under the contract declared on because, it is averred, Hunter was permitted, by and with the consent of the employer's officers, to discharge the duties of cashier, and to have control of and to handle assets of the bank beyond those powers usually conferred upon paying and receiving tellers, without accounting to the cashier daily, for assets so handled by him. Original plea 12 proceeded upon the same general theory, concluding with the averment that Hunter was permitted, by and with the consent of the officers of the employer, to discharge the duties of cashier, notwithstanding the employer had a cashier. Following rulings on demurrers adverse to these pleas, the defendant amended them. As we interpret the pleas after the addition to them of the matter introduced by their amendment, they then sought to set up as a defense the cumulative, ultimate fact that the practice described in original pleas 11 and 12 and permitted by the officers of the employer operated to remove the safeguards that a daily accounting by the paying and receiving teller with the cashier would have afforded if the teller had only performed the duties usually imposed upon a paying and receiving teller, thereby enhancing the risk above that assumed by the indemnitor when it assured the fidelity of Hunter as paying and receiving teller only. Whether the consideration is of the original or of the amended pleas 11 and 12, it is certain that in neither of them was it asserted that Hunter was made cashier of the employer, a banking office distinct from that known as paying and receiving teller, to Hunter's fidelity with respect to which the indemnitor gave its assurance.

[4] Hence the doctrine of the cases holding to nonliability of the indemnitor for infidelity in a different office or position from that in which fidelity is assured is without application to the inquiry raised upon the sufficiency vel non of these pleas, original or as amended. And it is also clear that these pleas, original or as amended, do not assert that the infidelity declared for was by Hunter while serving as cashier of the employer. Detroit Bank v. Ziegler, 49 Mich. 157, 13 N. W. 496, 43 Am. Rep. 456.

[5] And it is to be further noted, by way of appropriate elimination in order to disclose the question presented in this connection, that these pleas do not aver any affirmative obligation, intentionally or otherwise, assumed by the employer to engage and to retain, during the life of this indemnity, a cashier, or any false or fraudulent representation, inducing the indemnity given by the defendant that it had, and would continue to have during the period of the indemnity, a cashier. The averments that the employer did have a cashier and a paying and receiving teller, the subject of this indemnity, were not, of course, the equivalent of an allegation that the employer assumed an obligation to provide a cashier, or that the employer represented, to induce the indemnity, that it would have the services of a cashier during the life of the indemnity.

[6] Considering these pleas in their true legal effect, it is manifest that the matters sought to be availed of as defenses are these: The increase of the teller's duties by the employer, without the consent of the teller's indemnitor and the consequent enhancement of the indemnitor's risk through the added temptation to and opportunity for dishonesty by the employé arising from the wider powers allowed him while performing duties referable to the office of cashier, or duties not usually attaching to the office of paying and receiving teller. It does not appear from the complaint that Hunter's acts of dishonesty were other than in his capacity as paying and receiving teller. As stated, these pleas do not assert that the acts of dishonesty declared for were in another capacity, viz. as cashier. So, if these pleas were to be perfected as defenses under their theory, they must have carried the averment that the added duties were such as that their performance materially interfered with the discharge by the employé of the duties dishonestly breached by him in his capacity as such teller. Mayor, etc., v. Kelly, 98 N. Y. 467, 50 Am. Rep. 699, a deliverance approved, in the pertinent particular by this court in its decision in Saint v. Wheeler Man. Co., 95 Ala. 362, 375, 10 South. 539, 36 Am. St. Rep. 210.

[7] The fact that because of such added duties the employé may be or is subjected to greater temptation to dishonesty is immaterial. Mayor, etc., v. Kelly, supra. There are decisions in other jurisdictions, of which Kellogg v. Scott, 58 N. J. Eq. 344, 44 Atl. 190,

is an illustration, that conclude to a different effect; but this court has long since accepted the doctrine we have stated. There was no error in sustaining the demurrers to original and amended pleas 11 and 12.

Assignment of error numbered 6 brings into question the ruling of the trial court in sustaining demurrer to "amended plea 16." Original plea 16 was amended and then reamended; but the only error assigned with respect thereto presents for review the court's ruling on amended plea 16, which reads:

"(16) That one of the plaintiff's officers, in the line and scope of his duties as such officer, and in the discharge of his said duties, discovered a defalcation of said Hunter amounting to embezzlement or larceny, committed by said Hunter while discharging the duties of paying and receiving teller, and during the currency of the bond sued upon, and plaintiff and all of its officers, agents, and servants failed to give notice to this defendant of such defalcation, but retained said Hunter in its service and permitted him to have access to its cash and other funds, without defendant's consent, and that in and by said bond, as part thereof, it is proved and stipulated: 'That this bond shall become void from the beginning, if the employer shall at any time during the currency of said bond condone any fraudulent or dishonest act on the part of the employé which would give the employer the right to make a claim hereunder, and shall continue the employé in its service without written notification to the company.' Wherefore it says it is discharged from liability under said bond."

[8] While there is a measure of doubt of the pleader's purpose as read from the allegations preceding the quotation from the bond, it seems fairly certain that the intent was to assert a defense based upon the quoted provisions of the bond. Under the circumstances they recite, these stipulations intend the creation of a forfeiture of all rights or claims the employer may have had against the indemnitor previous and up to the time the conditions provided for the forfeiture prevailed in the extinction, *from the beginning* of the indemnitor's obligation in the premises. In order to avail of this forfeiture it was the pleader's obligation to aver *facts* which would invoke the bond's provisions. These provisions are without their intended effect, unless the employer *condoned* the defined act of the employé, *and also* continued "the employé in its service without written notification to the company."

[9] It will not be amiss, in this connection, to note that the extinction of liability under the bond is alone predicated of a failure of the employer to notify the company, under the particular circumstances specified in the quotation, not merely of the facts and acts described in the quoted provisions of the bond. It does not appear from this plea that the plaintiff *condoned* the alleged criminal act of the employé; nor is it averred that the officers or agents who knew of the alleged criminal act of the employé were so authorized or empowered by the employer as to effect the condonation of the averred acts of the employé. The demurrer took this objection to the plea; and the court was justified in sustaining the demurrer on that ground. In the face of the bond the following recital occurs:

"Whereas, the employé has been appointed in the service of the employer, and has been assigned to the office or position of paying and receiving teller by the employer, and has applied to the Alabama Fidelity & Casualty Company, for the grant of this bond; whereas, the employer has delivered to the company a statement in writing relative to the honesty, duties, and accounts of and the responsibilities and checks to be used upon the employé in said position and other matters which together with any statements hereinafter required by or made to the company and warranted by the employer to be true and do and shall constitute and form the basis of this contract, and the basis of renewals, in whole or in part of the specific guaranty now or hereafter expressed herein, and the basis of any new bond to the employer upon the employé named herein."

In the body of the bond, succeeding the recital of the consideration moving to the indemnitor, it is stated that the obligations assumed by the indemnitor were accepted "upon the faith of the said statements as aforesaid by the employer." The "statements" referred to in the above quotations were not offered in evidence. There was no effort of any kind to avail of or to present such "statements" to the court. The defendant insists that the judgment is laid in error, for that the "statements" were a part of the contract sued on, and, in consequence that the obligation and burden was on the plaintiff to introduce in evidence *all* of the instrument declared on especially since the recital in the bond affirmed that the "statement" related to the *duties* of the employé whose fidelity with respect thereto was assured by the bond. The plaintiff, the appellee, contends that the instrument declared on is under our statutes (Code, §§ 4543, 4544), a contract of insurance, and that by the positive provisions of Code, § 4579, 'no agreement, etc., not plainly expressed in the "policy," can be accepted or regarded as a part of the contract of insurance. Since the question raised by the appellant may be satisfactorily determined without considering whether our insurance statutes apply ex vi termini to the character of contract here sued on, this court will not, at this time, enter upon the consideration of the question, being content to note the following texts and decisions, cited by counsel for appellee in support of its view that the statutes mentioned are applicable in this instance: Amer. Surety Co. v. Folk, 124 Tenn. 139, 135 S. W. 778, 25 Ann. Cas. 1024, 1029; Supreme Commandery, etc., v. Ainsworth, 71 Ala. 436, 443, 46 Am. Rep. 332; Foster's Law of Guaranty (2d Ed.) pp. 11, 14, 18; 1 Cooley's Briefs, pp. 4, 5, 8–10; U. S. Fidelity Co. v. Bank, 233 Ill. 475, 84 N. E. 670.

[10] Independent of any possible effect of the statutes the rule is that in the interpretation or construction of contracts of this

character all fair doubts are to be resolved in favor of the party indemnified, just as is the practice in interpreting or construing contracts of insurance. Bank v. Fidelity Co., 126 N. C. 320, 35 S. E. 588, 83 Am. St. Rep. 682, 690, 691; Amer. Surety Co. v. Pauly, 170 U. S. 133, 144, 18 Sup. Ct. 552, 42 L. Ed. 977.

[11-13] Even if it be assumed (for the occasion only) that the quoted recitals of the bond effect to create a doubt whether the "statements" therein mentioned were intended by the parties to be a part of the contract, a due observance and application of the stated rule of construction requires the resolution of the (thus assumed) doubt in favor of the party intended to be indemnified against the dishonesty of its employé. The "statements" alluded to in the recitals quoted were not a part of the contract defined by the instrument sued on. Their possession was with the indemnitor, not the employer; and if they bore representations, or even warranties, the falsity or breach of which were efficient to exempt the indemnitor from liability under the contract, it was the defendant's, not the plaintiff's, duty to assert the defense or defenses thus and thereby afforded. Amer. Indemnity Co. v. Wood, 73 Fed. 81, 84, 85, 19 C. C. A. 264; Bank v. Fidelity Co., 126 N. C. 320, 35 S. E. 588, 83 Am. St. Rep. 686, 687. If the instrument here declared on had expressly defined the nature, extent, and particulars of the indemnity given by reference to the "statements" alluded to in the recitals before quoted, the doctrine of Ala. & Tenn. R. R. Co. v. Nabors, 37 Ala. 489, would have been applicable. There the obligation sued on defined the "conditions and terms" of the loan by the affirmative appropriation of what was stated in certain resolutions of the board of directors, thus excluding any possibility of ascertaining and knowing the terms of the contract without being also advised of the "conditions and terms" of the resolutions. In such circumstances the court held that it was the plaintiff's initial duty to bring forward evidence disclosing all of the terms and conditions of the contract. Here, as indicated, the instrument sued on is complete in itself. Its allusion to the "statements" furnished by the employer is referable to the stage of negotiations with a view to contracting. If the draftsman of the instrument had intended to create a contractual status to which the manifestly sound doctrine of the Nabors Case could have application, he would have made the contents of the "statements" of the essence of the contract. There is therefore no merit in the appellant's contention that the plaintiff fell short of discharging its burden of proof in omitting to offer in evidence the "statements" alluded to in the instrument sued on.

[14] The plaintiff was permitted, over defendant's objection, to show by Pettiford, an expert accountant who served as auditor of and for the bank, that certain specific amounts of money which were alleged to have been embezzled by Hunter were not noted or accounted for in any manner on the books of the bank. It was shown that Pettiford had examined the books of the bank; that these books were in the court; that they were very large books, containing a vast number of entries made in the course of the progress of the bank's business; that to submit these books to careful scrutiny by a witness on his examination or by the court would have required a long and tedious process; and that an expert accountant in defendant's employ had theretofore examined these books. The burden of proof was on the plaintiff to show acts of embezzlement by Hunter, within the indemnity given by the defendant. In order to meet this burden the plaintiff sought to adduce evidence through the line of questions indicated, of a positive fact by recourse to proof of a negative, viz. what, in respect of certain matters, the books of the bank did *not* show; and to this end the witness Pettiford, an expert who had examined the books of the bank, was asked to state whether the matters under inquiry were of record in the books of the bank. In Burton v. Driggs, 20 Wall. 125, 136, 22 L. Ed. 299, it is said:

"Where it is necessary to prove the results of voluminous facts or of the examination of many books and papers, and the examination cannot be conveniently made in court, the results may be proved by the person who made the examination. Here the object was to prove, not that the books did, but that they did not show certain things. The results sought to be established were not affirmative, but negative." 1 Green. on Ev. § 93; 2 Ency. of Ev. pp. 284, 285.

[15] In one aspect the rule reproduced from Burton v. Driggs, manifests a sensible relaxation of the general requirement that, unless rationally impossible, the *best* evidence bearing immediately upon a fact in issue is alone admissible; the reason for this relaxation of the general rule being found in the motive to conserve and to promote the very desirable practical administration of justice. When the rule, as thus relaxed, should be accorded application is a matter of sound judicial discretion, for abuse of which only will the appellate court revise the trial court's action in the premises. Under the circumstances disclosed by the record, it is clear that the discretion thus reposed in the trial court was wisely and well exercised in this instance.

In February, 1914, the plaintiff had to its credit with another Selma bank approximately $5,500. Hunter signed checks on this account, and thereupon received funds of the plaintiff from its creditor, the other Selma bank. These checks were signed, "R. W. Hunter, Cashier." Hunter was not cashier of the plaintiff. He had no authority to so sign checks on the plaintiff's account with the Selma bank. It appears from the evi-

dence that Hunter was the only "active" man in the bank, though a bookkeeper served therein the purposes indicated by the name of the position, "bookkeeper." It is insisted for appellant that it should not be held responsible under the indemnity of Hunter's fidelity as paying and receiving teller for acts of embezzlement effected through his described signature (as cashier) of these checks, whereby he secured possession of the funds he received from the other Selma bank, and appropriated them to his own use. It is not made to appear that the plaintiff obliged itself to have a *cashier* in its service during the period this indemnity was in force. It is not shown that pending the period of this indemnity Hunter was chosen to the position of cashier. Indeed, the proof is to the contrary. As viewed in the light of the facts established by the evidence, the effect of the appellant's contention is that by allowing or requiring Hunter *as teller* to perform services usually performed by a *cashier*, and hence to enjoy a wider authority and a greater, unchecked (by the presence of a cashier) opportunity than one would or could have to prove unfaithful, within the conditions of the indemnity here given, in the position of paying and receiving teller it was exonerated from liability under its indemnity; in short, that the indemnity given only assured Hunter's fidelity while serving, strictly, as paying and receiving teller of the plaintiff. To accept this contention exacts, as is apparent, the strictest narrowest construction of the nature and extent of the obligations assumed by this indemnitor. It is, we think, too narrow to merit the approval of this court. The correct doctrine with the concise, well-directed criticism of the opposite view, is thus stated in 1 Michie on Banking, § 54:

"*Breach of Trust or Theft Outside Scope of Duties.*—A bond conditioned upon the faithful performance of the duties assigned to, and the trust reposed in, one of the obligors as an employé of a bank is not to be narrowed by construction into an undertaking to make good only those losses resulting from a failure of the employé to faithfully perform and execute the trust in so far as it relates only to the duties incident strictly to his particular position, but it is an undertaking to stand sponsor for his honesty as an employé of the bank, without regard to whether he purloins the particular money or property intrusted to him by virtue of his position,' or whether he misappropriates other funds of the bank which do not, in the ordinary course of business, come into his hands, and with which he officially has nothing to do, but to which his employment enables him to gain access. The contrary doctrine was applied, however, in a Virginia case, in which it was held that the sureties of an accountant were not liable for moneys taken by him out of the teller's drawer, without the teller's knowledge or consent, the accountant not being intrusted with nor put in possession of any moneys of the bank. The majority of the court in that case took the ground that the sureties were not bound for his faithfulness in matters outside the scope of the duties of his position, as that he should commit no theft or other felony against the bank with respect to matters wholly unconnected with the duties of his position.

But dishonesty and theft can never be within the scope of an employé's duties, and beyond question the better doctrine is that stated in the New York case, which criticizes and refused to follow the Virginia decision."

[16] This text is aptly supported by what seems to us to be the conclusive reasoning of Rochester City Bank v. Elwood, 21 N. Y. 88. There is no particular necessity to further extend this opinion by reiterating what is there so well said. In order to bring into his possession the funds subject to the check of his employé in the other Selma bank Hunter falsely signed the checks as cashier, a position he did not hold. The fact that he was the plaintiff's teller enabled him to effect his criminal purpose through the false signature of the checks on the neighbor bank. The indemnity given afforded assurance of Hunter's fidelity "in connection with" the performance of the duties of the position of paying and receiving teller. This contract of indemnity of Hunter's fidelity as paying and receiving teller did not restrict the scope and effect of its obligation to criminal breaches of those particular duties; but the contract comprehended, also, the assurance that Hunter would not prove dishonest within the definition of the instrument, in relations and under circumstances which his position and duties as paying and receiving teller in the bank afforded him to gain the possession of and to embezzle the funds of his employer. Rochester, etc., v. Elwood, supra; Detroit Bank v. Zeigler, 49 Mich. 157, 13 N. W. 496, 43 Am. Rep. 456. There is no evidence in the record that the positive criminal acts he committed in gaining possession of the employer's funds from the other Selma bank and in embezzling it were palliated or justified by any condition wrought by or arising out of the discharge by Hunter of any duty in fact imposed upon him by his employer. He embezzled the proceeds of these false checks; and no excuse or justification therefor can be traced to even neglect or inadvertence superinduced by his discharge of any duty whatsoever. His opportunity to thus manifest his dishonesty was offered by and through his position as teller.

[17] There was no error committed in admitting these checks; nor was there error in holding this indemnitor liable to the employer in consequence of these criminal acts of the employé. Prior to the giving of this indemnity, there appeared *on the books* of the employer a shortage of approximately $1,400. It cannot be concluded from the evidence in this record that any part of this discrepancy, large as it was, was attributable to *dishonesty* on the part of Hunter, or that the employer knew of any dishonesty on his part before the indemnity was given. In such cases the indemnitor is not exonerated from liability unless the employer knew of dishonest acts by the employé in his service, and, retaining him in its service, failed to advise the indemnitor of the fact that the

employé, whose honesty the indemnitor is about to assure, has committed acts of dishonesty in his service.

[18] The evidence is clear to the point that up to the afternoon of February 28, 1913, Hunter had embezzled during the life of his indemnity the sum of $7,122, for which, after proper deductions made, the indemnitor was responsible on the bond. Hunter absconded with $3,110, taken by him from the bank's vault on the night of February 28, 1913. The trial court did not regard this amount, or any part of it, as being within the assurance given by this indemnitor because of the bank's failure to immediately notify the indemnitor of the fact that during the afternoon of February 28, 1913, the officers of the bank became aware of Hunter's defalcation to the amount of $7,127. *Of this sum* of $3,-110, taken by Hunter on the night of February 28, 1913, $2,490 was recovered by the bank. It cannot, of course, be seriously contended that the sum thus recovered ($2,490) should serve to reduce the amount represented by Hunter's shortage ($7,127), existing and known on the afternoon of February 28, 1913.

[19] From the shortage existing and known at that time the trial court properly deducted the amount subsequently received from Hunter's resources, viz. $2,025, leaving the amount, interest being included, for which judgment below was entered. There is no room in the case for recourse to the rule which applies the first payments to the extinguishment of older items of a running account, within the doctrine illustrated in Harrison v. Johnston, 27 Ala. 445, as that doctrine has been subsequently interpreted in Stickney v. Moore, 108 Ala. 590, 597, 19 South. 76, and in Montgomery Bank & Trust Co. v. Jackson, 190 Ala. 411, 415, 416, 67 South. 235. The bonding company's obligation was to indemnify this employer, to the extent of $5,000, for losses resulting to it from the infidelity of Hunter within the terms of the contract.

[20] While there appears to have been no occasion or necessity for the adduction of evidence with respect to the custom prevailing in banks of this type to have only one active man in its service, we cannot see that any possible prejudice to the appellant resulted from the reception of evidence by the trial court, hearing the cause without a jury, relating to the custom indicated. First National Bank of Talladega v. Chaffin, 118 Ala. 246, 24 South. 80.

No prejudicial error appearing, the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.

On Rehearing.

McCLELLAN, J. . [21, 22] This record has been reconsidered with reference to the matters discussed in the brief in support of the application for rehearing. The court continues satisfied with its original conclusion that "the bonding company's obligation was to indemnify the employer, to the extent of $5,000, for losses resulting to it from the infidelity of Hunter within the terms of the contract;" that the fact, *if so*, that this employer may have had, or may have, an enforceable claim against the Selma National Bank for the sums deducted from the employer's account with that bank on checks drawn upon the account by Hunter *as cashier*, when he was not the cashier of the employer, is immaterial, and without effect to qualify the contractual right of this employer to enforce the indemnity promised it in the defendant's bond, as was soundly ruled in Champion Ice Co. v. Amer. Bonding Co., 115 Ky. 863, 75 S. W. 197, 103 Am. St. Rep. 356, 362, and that there is no merit in the defendant's contention that the *second* notice of claim under the bond effected to contradict or to waive the aggregate of the net sum asserted in the notices and in the complaint to have been lost; particularly since it is apparent that the *second* notice of claim was but supplemental to that originally given the defendant on the day previous. It is hardly necessary to repeat that if the plaintiff suffered losses aggregating as much as $5,000 through the infidelity of Hunter within the period covered by the bond and for causes described in the bond, the defendant, as indemnitor, was and is liable therefor in this action, unless such right to recover was waived or extinguished, which is not shown; and hence there is no room for recourse to the rule for the application of payments of which specific account was taken in the original opinion.

[23] It is urged that error affects our ruling on the question of the propriety of the trial court's action in permitting the auditor, Pettiford, to testify "that certain specific amounts of money alleged to have been embezzled by Hunter were not noted or accounted for in any manner on the books of the bank." It was affirmatively shown that Hunter's duties included the duty to make and keep records from which the institution's bookkeeper would, under the system prescribed, transfer the entries to the more permanent books used to perpetuate the bank's daily operations. In these circumstances it was proper to admit the negative testimony indicated, it being impracticable, because of the volume of the book matter, to present evidence to this negative effect otherwise than through the means of the advised statement of a witness who had examined the books. Burton v. Driggs, 20 Wall. 125, 136, 22 L. Ed. 299; 2 Ency. of Ev. pp. 284, 285. There is no merit in the criticism that it was not shown, as a condition precedent to the competency of this character of evidence, that the books inquired about, to quote the brief in support of the application for rehearing, "were kept

by or under the direction of Hunter, or that they were correctly kept." The first alternative of the criticism was answered by the indicated evidence showing Hunter's affirmative duty to make the appropriate entries. The other branch of the criticism is based upon an objection directed against the auditor's conclusion, of a negative nature, from a number of books, one at least of which it was Hunter's affirmative duty to keep. It was hence unsupported by the predicate for its assertion. But aside from that, the issue of Hunter's infidelity, under the indemnity sued on, was open to be established by evidence tending to show breaches of his duty in making records or entries that, if made, would have disclosed his infidelity or have hindered the promotion or accomplishment of his criminal purposes.

[24] Since the records to be made by the bookkeeper were, under the system prescribed, to be taken from the original records or entries made by Hunter in the discharge of his duties, the books regularly kept by the bank's bookkeeper, presumptively correctly, were matters admissible, though in a sense collateral to the particular inquiry, viz. Hunter's infidelity vel non in the premises. If the auditor's conclusion was ill founded in respect of his statement, of a negative nature, that a record of certain of Hunter's transactions did not appear on the books of the bank—were not noted, even, on the original record his duty required him to keep—the defendant had ample opportunity and facility from the books themselves to refute the auditor's stated conclusion.

[25] There was credible evidence, including the admission, detailed in the testimony as having been made by Hunter himself, that the bank lost the amount represented by the checks made upon or drawn against the plaintiff's account with the Selma National Bank. Notwithstanding Hunter employed a part of these sums to discharge demands against the plaintiff bank, the evidence justified the trial court's conclusion that the failure to note these disbursements on the books of the plaintiff bank laid the premise for the misappropriation by him of the amount of excess thus created, thereby permitting, in that connection, a *balance* between the books and the monetary assets of the bank. As the trial court found, it was inferable from the evidence that $2,490 recovered from Hunter was of the funds extracted after his defalcation was discovered. The supplementary statement of loss, itself, recited that the stated sum was of the sum so extracted. There was no effort on defendant's part to restrict the efficiency of this recital to show that such was the fact. This recital was some evidence of the fact it affirmed, and, no objection to it or effort to limit it being made or interposed, was due to be considered by the court as evidence of the fact it purported to recite. The text of 4 Cooley's Briefs on Ins., pp. 3437, 3438, concludes nothing to the contrary; that text being predicated of decisions that considered the *admissibility* of statements in proofs of loss where objections thereto were made on the trial.

The points pressed in the application for rehearing are, in our opinion, without merit.

The application is denied.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.