## FIDELITY & DEPOSIT CO. OF MARYLAND v. CENTRAL STATE BANK OF DALLAS. (No. 724.)

Court of Civil Appeals of Texas. Waco. Dec. 13, 1928.

Rehearing Denied Jan. 17, 1929.

Albert B. Hall, of Dallas, for appellant.

Winfrey & Lane, of Dallas, for appellee.

STANFORD, J. Appellee sued appellant on a bond executed by it as a surety for J. E. Laney, alleging that certain promissory notes were delivered to him for collection; that Laney agreed to collect said notes and promptly remit the proceeds, or to return said notes; and that appellant as surety on said bond guaranteed that Laney would faithfully perform his said contract; that J. E. Laney had failed to comply with his contract, and had appropriated said notes, or the proceeds of same, to the amount of $660. The case was tried before the court without a jury and judgment rendered for appellee for $660. Appellant has duly appealed, and presents the record here for review.

Under its first proposition appellant contends that the pleadings and uncontradicted evidence show the bond declared upon covers only pecuniary loss from larceny or embezzlement committed by larceny, and the alleged loss was represented only by notes, which, through accident, mistake, or negligence were surrendered to their makers, who were not thereby released from liability thereon, and so the judgment for plaintiff is without pleading or evidence to support it. We will consider all of appellant's contentions together. The pleadings properly plead the case as made by the evidence. The evidence as shown by the record is as follows: J. E. Laney operated the Citizens' Bank & Trust Company at Quinlan, Tex., which was a private, unincorporated institution owned by seven or eight men; but J. E. Laney owned 50 per cent. of the stock and had full control and management of said banking concern. J. E. Laney borrowed some money from appellee, Central State Bank of Dallas, for the said Citizens' Bank & Trust Company, and gave a note to appellee therefor, and placed with appellee as collateral security for said note certain notes executed by various parties in and around Quinlan, Tex., which notes were payable to the Quinlan bank. The Quinlan bank got into financial difficulties and could not meet its obligation to appellee, and the said Laney began to liquidate the Quinlan bank. There was no receiver, trustee, or other liquidating agent. A Mr. Neal was appointed by the owners of said concern to assist in winding up its affairs, but Mr. Laney continued in active charge. While the Quinlan bank was being liquidated under the management of Mr. Laney, appellee arranged with Laney to turn over to him certain of these collateral notes in order that he might collect them and remit the proceeds to appellee to be applied on the note due appellee. This was arranged by a written agreement whereby Laney acknowledged the receipt of the collateral notes for collection, naming them, and agreed to remit the proceeds of

said notes collected, or return the notes themselves, to appellee. J. W. Hoopes, who was acting for appellee in this transaction, desiring some assurance that Mr. Laney would return either the money or the notes to appellee, called an agent of appellant over to the bank and showed him the agreement with Mr. Laney, and explained to him fully the agreement between appellee and Mr. Laney by virtue of which said notes were being turned over to Laney, and asked said agent of appellant if he could give him a bond guaranteeing that Mr. Laney would do what he agreed to do—that is, either return the proceeds of the notes or the notes themselves, if not collected. The agent of appellant said that he could, went back to his office, mailed appellee the bond made the basis of this suit, together with a bill for $50, the premium for said bond, which appellee paid. There were several of said notes, amounting to $660, for which no part of the proceeds was remitted nor said notes returned. Mr. Laney admitted that certain of said notes were turned over to the makers thereof and the proceeds not remitted to appellee, explaining that these makers had certain amounts of money on deposit in the bank and that they were given these notes in exchange for their bank balances. Mr. Laney stated that he did not do this personally, but Mr. Neal, who was working for the liquidating committee, did so, but he admitted he was present when the committee, some time before this, passed a resolution authorizing Mr. Neal to exchange notes for bank balances.

The above are the material facts in the case and are practically undisputed. The bond provides:

"The Fidelity & Deposit Company of Maryland * * * does hereby agree to pay unto Central State Bank, Dallas, Texas * * * the amount of any direct pecuniary loss, which any Employé * * * may while in any position and at any location in the service of the Employer, directly or by collusion with others, cause to the Employer * * * through any act of larceny or embezzlement committed," etc.

■■ This case having been tried before the court, and no findings of fact in the record, it is our duty to presume the trial court found every essential issuable fact in support of the judgment. The Quinlan bank being an unincorporated joint-stock concern, owned by seven or eight persons, doing a banking business under the name of the Citizens' Bank & Trust Company, same was, in effect, a partnership, engaged in the banking business; and the claims of depositors for money deposited in said bank were claims against said stockholders for which each stockholder was individually liable (articles 6137 and 6138, Revised Statutes 1925); and as Laney owned 50 per cent. of the stock of said Quinlan bank, he was, as between the partners, individually liable for one-half of the claims of said depositors. The evidence was sufficient to authorize the court to find that J. E. Laney, or his representative fully authorized by him to so do, collected the notes in question, and, instead of remitting the proceeds to appellee, as he had obligated himself to do, and as appellant surety guaranteed he would do, he appropriated the proceeds thereof to his own use and benefit by applying same to his own indebtedness to depositors. The undertaking of Laney to collect and remit the proceeds of said notes, or return same to appellee, was a personal trust or obligation on his part to appellee, and, if said notes or their proceeds were appropriated, it is immaterial whether same was done by J. E. Laney in person or by an agent to whom he intrusted said matter. ·

■■ We think, also, the effect of the transaction is the same as if J. E. Laney, or his duly authorized agent, had collected in cash the amount of said notes, and then, upon the request of the makers, had applied the proceeds so collected to J. E. Laney's indebtedness to the said makers of said notes. The law considers the substance, and not the mere form, of a transaction. As we view this case, there is only one issue and only one real defense made by appellant, and that is that Laney was not guilty of larceny or embezzlement in a criminal sense. We do not think it is necessary to decide this question. Appellant was made fully acquainted with the fact that appellee desired protection from financial loss against a possible failure of J. E. Laney to remit the proceeds of said notes or return same to appellee. Appellant knew this was the sole purpose of appellee's purchase of the insurance and the payment of $50 premium therefor. With full knowledge in this respect it issued its indemnity bond guaranteeing that J. E. Laney would remit the proceeds of said notes or return the notes to appellee. To say that appellant is not responsible for a loss occurring from the failure of J. E. Laney to perform the very acts which appellant guaranteed he would perform would be to ignore the clear and manifest intention of the parties in the execution of the contract. We do not think the contract of indemnity in this case makes it a prerequisite to a recovery that the offending party should be technically and criminally guilty of the offenses named in the bond. The embezzlement of the notes or the proceeds of said notes, though, perhaps, not embezzlement in the sense that a criminal prosecution could have been successfully maintained, yet was such embezzlement as is comprehended by the contract of insurance herein. Massachusetts Bonding & Ins. Co. v. Texas Finance Corporation (Tex. Civ. App.) 258 S. W. 250, and cases cited; Griffin v. Zuber, 52 Tex. Civ. App. 288, 113 S. W. 966; Fidelity & D. C. Co. v. Colorado Ice & Storage Co., 45 Colo. 443, 103 P. 383; American Bonding & T. Co. v. New Amsterdam Casualty Co., 125 Ill. App. 33;

Champion Ice Mfg. & Cold Storage Co. v. American Bonding & T. Co., 115 Ky. 863, 75 S. W. 197, 103 Am. St. Rep. 356; Rankin v. U. S. Fidelity & G. Co., 86 Ohio St. 267, 99 N. E. 314; Alabama Fidelity & Casualty Co. v. Ala. Penny Sav. Bk.; 200 Ala. 337, 76 So. 103; Mitchell Grain & S. Co. v. Maryland Casualty Co., 108 Kan. 379, 195 P. 978, 16 A. L. R. 1493; Salley v. Globe Indemnity Co., 133 S. C. 342, 131 S. E. 616, 43 A. L. R. 977. If a fidelity bond is reasonably susceptible of two constructions, one favorable to the insured and one favorable to the insurer, that construction will be adopted which favors the liability of the insurer for the act or default in question. Mass. Bonding & Ins. Co. v. Texas Finance Corporation, supra. See cases cited in 43 A. L. R. note, page 977. The terms "larceny" and "embezzlement," as used in the indemnity contract involved in this case, should be taken in a broad sense, as was evidently intended by the parties, covering any fraudulent appropriation of the property of appellee, though not amounting to a crime. 16 A. L. R., supra.

We have considered all of appellant's assignments, and, finding no reversible error, overrule same. The judgment of the trial court is affirmed.