Vol. 115]          APRIL TERM, 1903.          863

Champion Ice Mfg. & Cold Storage Co. v. Amer. Bond. & Trust Co.

CASE 101—ACTION BY THE CHAMPION ICE MFG. AND COLD STORAGE
CO. AGAINST THE AMERICAN BONDING AND TRUST CO. ON BOND
OF INDEMNITY.—JUNE 10.

# Champion Ice Mfg. and Cold Storage Co. v. American Bonding & Trust Co.

### APPEAL FROM KENTON CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.  REVERSED.

FIDELITY BOND—DEFAULT OF EMPLOYE—CONSTRUCTION—LOSS COVERED
—RAISING CHECKS—NECESSITY FOR LEGAL CONVICTION—LIABIL-
ITY OF BANK—REPRESENTATIONS—WARRANTIES.

Held:   1. A bond conditioned to reimburse an employer for such
pecuniary loss as he might sustain by any act of fraud or dis-
honesty, amounting to larceny or embezzlement, committed by
a designated employe in the performance of his duties as book-
keeper, or in such other position as he might be called on to
fill, covered a loss sustained by the fraudulent act of the em-
ploye in raising the amounts of checks which it was his duty
to fill out, whether such duty pertained to his office as book-
keeper, or to any other capacity in his employer's service.

2. In order that liability might attach on a bond conditioned to
insure an employer against larceny or embezzlement by an
employe, it was not necessary for the employer to introduce such
proof as would convict the employe of the crime of larceny or
embezzlement as defined by the laws of the State.

3. The contract expressed in an employe's fidelity bond is a form
of insurance, and any ambiguity is to be construed most strong-
ly against the company.

4. Where it was known to the officers of a bank that plaintiff's em-
ploye was its bookkeeper and trusted agent, and that he was
required to fill out and cash his employer's checks, though with-
out authority to sign them, any change in the amount of plain-
tiff's checks appearing in such employe's handwriting was within
the apparent scope of his authority, and payment thereof by
the bank would not impose any liability on it to reimburse plain-
tiff for the amount thereof.

5. The fact, though conceded, that a bank was liable for a loss re-
sulting to plaintiff through the fraudulent act of his employe
in raising the amount of checks drawn on the bank, would not

864     KENTUCKY REPORTS.     [Vol. 115

Champion Ice Mfg. & Cold Storage Co. v. Amer. Bond. & Trust Co.

release such employe's surety on a fiduciary bond from liability to plaintiff.

6. Statements by an employer in an application for a fiduciary bond for one of his employes that such employe's position would be merely that of bookkeeper, and that the largest amount of cash likely to be in his custody would be but a few dollars, did not amount to warranting, under Kentucky Statutes, 1899, section 639, providing that all statements or descriptions in an application for an insurance policy shall be deemed representations, and not warranties.

7. Where a bond insured an employer against any fraudulent conduct of an employe, amounting to larceny or embezzlement, in his position as bookkeeper, or in any other position to which he might be called, representations by the employer in his application for a bond that the largest amount of money likely to be in the employe's hands would be but a few dollars could not be considered fraudulent or material, but as mere promissory representations.

**J. W. BRYAN, ATTORNEY FOR APPELLANT.**

### CLASSIFICATION UNDER RULE SEVENTEEN.

1. Interpretation of Bond—Ambiguity. The bond sued on was prepared by appellee, and any ambiguity must be construed most strongly against it. American Surety Co. v. Pauly, 170 U. S., 133; First National Bank v. Hartford Fire Ins. Co., 95 U. S., 673; Western Ins. Co. v. Cropper, 32 Pa., 351; Reynolds v. McConkey, 127 U. S., 661; Fowkes v. Manchester Life Assur. Asso., 3 Best & S., 917; Anderson v. Fitzgerald, 4 H. L. Cas., 483.

2. Appellee must be held to its risk in the broadest sense that is required to indemnify appellant for any loss sustained by it through the dishonesty of Weitkamp, the insured bookkeeper. Guarantee Co. of North America v. Mechanics' Savings Bank & Trust Co., 80 Fed. Rep., 766.

3. Under the terms of this bond appellee insured appellant against loss by the dishonesty of Weitkamp while he *occupied* the position of bookkeeper, or such other position which he might be called upon by appellant to fill. Any other meaning to the words "performance of his duties" would render the bond nugatory.

4. Warranties—Estoppel. Appellant truthfully and correctly answered every question propounded to it by appellee in the application for insurance. If they were untrue, unless material or fraudulent, that would not prevent a recovery. Ky. Stats., sec. 639; Frost's Law of Guaranty Insurance, sec. 55; Joyce on Insurance, par. 190.

5. As to the Liability of the First National Bank. Admitting, for the sake of argument, that appellant had a cause of action against the First National Bank for this money, still that would not exonerate appellee. Appellant could not recover the overpayments made upon these checks, the *signatures* thereto and the *endorsements* thereon *being genuine*, and there being nothing about them to indicate to the officers or agents of the bank that there had been any alteration in the amounts. Deposit Bank of Georgetown v. Fayette National Bank, 90 Ky., 10; Rice & Givens v. Citizens, &c., Bank, 21 Ky. Law Rep., 346; Morse on Bank and Banking, sec. 480; Young v. Grote, 4 Bing., 253; Daniel on Negotiable Instruments (3 ed.), secs. 1661, 1654a; Espy v. First Nat. Bank Cin., 18 Wall., 604; Minor's Inst., vol. 3, part 1, pp. 464, 465; Oppenheim v. West Side Bank, 50 N. Y. Sup., 148; Third National Bank v. Merchants' National Bank, 76 Hund., 475; 27 N. Y. Sup., 1070; Smith v. Mercer, 6 Taunt., 76; Peoples' Sav. Bank v. Capps, 91 Penn. St., 315; National Bank of Commerce v. National Mechanics' Banking Assn., 55 N. Y., 213; Bank of Commerce v. Union Bank, 3 Coms., 230; Redington v. Wood, 45 Cal., 406; National Park Bank v. Ninth Nat. Bank, 55 Barb., 124; Bigelow on Estoppel, 435, 436.

S. D. ROUSE, ATTORNEY FOR APPELLANT.

The propositions relied upon by appellant in the oral argument of this case are:

First, that it is immaterial whether or not the First National Bank is liable for the amount which it paid on the raised checks, the appellant's account at said bank having been charged with said amounts.

Second, there was no misrepresentation.

(a) If there was misrepresentation it was waived by appellees acknowledging liability in part on the bond, and paying a part of the shortage into court.

(b) If misrepresentations were made amounting to warranties or otherwise, there was no violation of same as the shortage was occasioned not by reason of the bookkeeper's handling more cash than appellee claims was contemplated when the bond was executed, but by his raising checks entrusted to his care.

FRANK M. TRACY, FOR APPELLEE.

The brief of counsel for appellee not being in the record, the reporter, in lieu thereof, has taken the following extracts from counsel's petition for rehearing:

Attorneys sometimes through over-confidence fail to present their cases as clearly as they should, and I fear that I have

erred in this respect. Moreover, some of the essential and vitally important points in the case, at least evidently so considered by the court, were not argued at all, and I am satisfied that in these particulars the court has fallen into gross error.

1. The court will remember that the chief contention in this cause was that appellant, the Champion Ice Company, had not suffered any loss by reason of the act of Weitkamp in raising the checks, and that the loss, if any there was, was that of the First National Bank. With this contention the court in its opinion did not agree, but I am sure if the court will again examine the authorities it will find that the law as laid down on page 8 of the opinion is erroneous. The court said:

"It is contended by counsel for appellee that the First National Bank of Covington is liable to appellant for the sum embezzled by Weitkamp and that it therefore has no cause of action upon the bond executed by appellee. We do not so understand the law. It is true that the relation of the bank and its depositor is that of debtor and creditor, and it is likewise true that a bank must note the signature of a depositor who draws a check upon it. It may, for the purpose of this case, even admit the rule to be that a bank in paying a forged or altered check, does so at its peril, and at its own loss, but we think the facts of this kind present an exception to this rule."

I earnestly beg the court to re-examine the authorities referred to and I am satisfied that the court will conclude that its statement of the law with reference to the liability of the bank for the payment of an altered or raised check is entirely erroneous. I believe that no rule of law is better settled than that the bank pays that which is drawn on it by its depositors at its peril, and unless the drawer of the check is guilty of negligence, the bank must suffer the loss.

2. Starting, therefore, with the premise that a bank is undoubtedly liable for the payment of a forged or altered check, let us consider the exception mentioned by this court in its opinion. This court, on page 8 of its opinion, said:

"It was known to the bank's officers that Weitkamp was the bookkeeper and trusted agent of appellant and that he was required to fill up and cash its checks though without authority to sign them in his own name or that of his employer. In the course of their business relations with the appellant, its officers and agents, the bank officers are presumed to have become acquainted with their handwriting and that of Weitkamp, and therefore any change of the amount of a check from appellant appearing in the handwriting of Weitkamp would have excited neither alarm nor suspicion in their minds, as such alteration

or change would have been in the apparent scope of Weitkamp's authority, and the payment by the bank of any check altered by him under such circumstances would not impose any liability on the bank to re-imburse appellant for the amount thereof."

This exception to the general rule that banks suffer the loss when they pay forged or altered checks is entirely new in the law governing commercial paper. It was not contended for by counsel in the argument of this clause; it has never heretofore been held by this court and in no case that I have been able to find touching upon this branch of the law has any such ruling ever before been made. It is a novel and heretofore unheard of exception to the general rule uniformly adopted by all the counts throughout the land, and I earnestly contend that it is not only unsupported by authority, but it is destructive of the law not only relating to commercial paper, but also to the law of principal and agent.

Following the rule as laid down by the court to its logical conclusion, we find that under this ruling a principal is to be held for every act of his agent, however unauthorized it may be, provided he presents the appearance of acting within the scope of his employment. However great the fraud of the agent may be; however unauthorized his acts may be; however gross the fraud or crime he may commit, so long as he presents the appearance to third parties of acting within the scope of his employment, the principal must suffer by his act.

This is the logical and inevitable result of the rule laid down by this court in this action.

3. The third point to which I wish to direct the attention of the court seems to me to be so perfectly clear that I am unable to understand how the court could have arrived at the conclusion it did. On pages 8 and 9 of the opinion the following language is found:

"But even though the bank were liable to appellant for the amount the checks were raised, that fact would not, in our opinion, exonerate appellee from liability. The purpose of the bond was to furnish indemnity to appellant from loss resulting from the fraud or dishonesty of Weitkamp. . . . Appellee's liability does not depend upon whether appellant might collect the stolen $500 from some one else. Having a right of action against the defaulter, Weitkamp, appellant has also a right of action against the guarantor of his honesty."

When the bank paid the raised checks, which suffered the loss? The bank or the ice company? Either the one or the other suffered—not both. I concede that we would be liable if the ice company suffered, but isn't it absolutely certain and

868 · · KENTUCKY REPORTS. [Vol. 115

Champion Ice Mfg. & Cold Storage Co. v. Amer. Bond. & Trust Co.

clear that it did not. As heretofore indicated, the loss resulting from the payment of the raised checks falls on the bank; if that is so, what loss has the ice company suffered? If it has suffered no loss how can there be a liability on the bond. We agreed to indemnify the ice company from loss; if there was no loss how can we be liable. Isn't the statement of the court in its opinion palpable error? If it is established, as I think it has been, that the bank was the loser by Weitkamp's fraud, by what possible reasoning can appellee be held on this bond. It did not agree to indemnify the bank, yet that is what this court is compelling it to do.

OPINION OF THE COURT BY JUDGE SETTLE—REVERSING.

The appellant, Champion Ice Manufacturing & Cold Storage Company, is a corporation doing business in Covington, Ky. It had in its employ a bookkeeper, Geo. H. Weitkamp by name, of whom it required a bond of indemnity, which was furnished by the appellee, American Bonding & Trust Company, for the consideration of $12.50 paid it in cash. By the terms of this bond, appellee agreed to indemnify appellant for one year from any "loss which it might sustain by reason of any fraudulent or dishonest act upon the part of Weitkamp, amounting to larceny or embezzlement," that might occur while he continued in appellant's service as bookkeeper. It appears that Weitkamp, while in appellant's service, wrongfully converted $94.91 of its money, and, in addition, raised five of its checks, each $100 in amount, which he caused to be cashed at the First National Bank of Covington, and appropriated to his own use the amounts thus fraudulently realized. These frauds seem to have been committed in the following manner: The weekly pay roll of the appellant company, as prepared by one of its officers, was furnished Weitkamp, as bookkeeper, with direction to make out the checks, payable to himself, for the amounts indicated. Upon thus filling out the checks as directed, Weitkamp handed them to the prop-

er officer of the company, who signed and returned them to him to take to the bank to be cashed. Weitkamp raised five of these checks $100 in amount, each, had them cashed, and retained the amounts of the excess over and above the sums for which they were originally and truly issued. The checks thus fraudulently raised are supposed to have been destroyed by Weitkamp. At any rate, they have not been found or produced by appellant. The aggregate amount realized by Weitkamp, from the fraudulent alterations of the checks was $500, and the additional sum of $94.91 he retained out of moneys collected by him as bookkeeper of appellant, or took from its money drawer. Weitkamp, upon learning that his peculations were about to be discovered by appellant, fled to parts unknown, and has ever since remained concealed and unapprehended; and this action was instituted by appellant in the Kenton circuit court to recover of appellee, on the bond mentioned, the sum of $594.91 fraudulently appropriated by Weitkamp in the manner stated. The appellee filed answer to the petition, denying any liability on the bond, except to the extent of $94.91, made up of small amounts taken by Weitkamp from the cash drawer, or collected of appellant's customers, which it tendered to appellant, and, in addition, averred, in substance, that the remainder of the sum lost to appellant is not covered by the terms of the bond, and that the First National Bank, which cashed the checks raised by Weitkamp, is the sole loser by his fraud, and must account to appellant, under the laws of banking, for the amount of his defalcation, and, further, that appellee can not be held liable on the bond given for Weitkamp, for the reason that appellant, in order to procure the bond, made various misrepresentations as to the duties and responsibilities to be imposed upon Weitkamp, because of

which a leged misrepresentations appellant is estopped from recovering on the bond. After the filing of the reply, which controverted the affirmative allegations of the answer, the case went to trial, and upon conclusion of appellant's testimony, the lower court, upon appellee's motion, gave the jury a peremptory instruction to find for appellee, which they accordingly did. Judgment was thereupon entered dismissing the petition and allowing appellee its costs. Thereafter appellant entered motion and grounds for a new trial, which was refused. Of the judgment dismissing its petition and refusing the new trial, appellant now complains, and asks a reversal at the hands of this court.

The appellee company is engaged in the business of furnishing bonds to secure the honesty and fidelity of fiduciaries and employes, and the one sued on in this case provides, among other things, that appellee "does hereby agree that it will within three months after receipt of proof, satisfactory to its officers and subject to the conditions hereinafter expressed, reimburse the employer [appellant], to an amount not in excess of the penalty of this bond [$2,500], for such pecuniary loss as the employer shall have sustained of money, securities or other personal property belonging to the employer, or for which the employer is responsible, by any act of fraud or dishonesty amounting to larceny or embezzlement committed by the employe during the continuance of this bond, in the performance of the duties of said office, or position, or such other position as he may be subsequently appointed to, or called upon to fill by the employer in said service." The bond further provided that, in case of discovery of default or loss, the appellant should give immediate notice to appellee, etc. There can be no question but that the covenants of the bond cover such a loss as was sustained by the appellant. Its

only purpose was to insure against loss that might result to appellant, from the fraud or dishonesty of Weitkamp, amounting to larceny or embezzlement, whether the loss was that of money, securities or other personal property belonging to appellant, or for which it might be made responsible; and the indemnity thus afforded by the bond not only applies to any act of fraud or dishonesty which Weitkamp may have committed in the performance of his duties as bookkeeper, but also to such as he may have committed in any other position in appellant's employment which he may have been called upon to fill. It is not material, therefore, whether the fraudulent and dishonest acts of Weitkamp which caused loss to appellant were committed by the making of false entries in its books, by the raising of its checks, or by abstracting money from its money drawer; nor is it material whether he was at the time acting as bookkeeper, or in some other capacity in appellant's service. In either or in any of these events, appellee, under the terms of the bond, would be, and is, liable for the loss which he occasioned.

There can be no doubt, under the evidence in this case, but that Weitkamp was authorized by appellant, and that it was a part of his duty, to receive money due it from its customers, and to draw money from the bank in which appellant's account was kept; and it was also his duty to account to appellant for the moneys thus received. His failure to do so was dishonest and fraudulent, and, in fact, constituted an act of embezzlement; and, for the loss resulting to his employer thereby, appellee's liability is fixed by the terms of the bond.

It was not necessary, in order to fix the liability of appellee upon the bond, that appellant should produce, in support of any claim that it might have arising thereunder,

such proof as would convict Weitkamp of the crime of larceny or embezzlement as defined by the laws of Kentucky. Such a narrow construction of the provisions of the contract is not required by the law, and was never contemplated by the parties to it. While larceny is a common-law crime, yet in this State the punishment therefor is statutory. Embezzlement is purely a statutory crime, but the terms "larceny" and "embezzlement," in the bond or policy sued on, are used as generic terms to indicate the dishonest and fraudulent breach of any duty or obligation upon the part of an employe to pay over to his employer, or account to him for, any money, securities or other personal property, the title to which is in the employer, that may in any manner come into the possession of the employe.

It will be observed that the bond in this case is a printed one—prepared, doubtless, by a skilled attorney in appellee's employ. The contract expressed therein is but a form of insurance, and the law of insurance is that, in the construction of policies, if there be any ambiguity in them, it must be construed most strongly against the insurance company. In American Surety Company v. Pauly, 170 U. S., 133, 18 Sup. Ct., 552, 42 L. Ed., 977, Mr. Justice Harlan admirably states this rule as follows: "If, looking at all its provisions, the bond is fairly and reasonably susceptible of two constructions, one favorable to the bank, and the other favorable to the surety company, the former, if consistent with the objects for which the bond was given, must be adopted; and this for the reason that the instrument which the court is invited to interpret was drawn by the attorneys, officers or agents of the surety company. This is a well-established rule in the law of insurance. First National Bank v. Hartford Fire Insurance Company, 95 U. S., 673 [24 L. Ed., 563]. . . . As said by Lord St. Leonards

in Anderson v. Fitzgerald, 4 H. L. Cas., 483: 'It [a life policy] is, of course, prepared by the company; and if, therefore, there should be any ambiguity in it, it must be taken, according to law, most strongly against the person who prepared it.' There is no sound reason why this rule should not be applied in this case. The object of the bond in suit was to indemnify or insure the bank against loss arising from any act of fraud or dishonesty on the part of O'Brien in connection with his duties as cashier, or with the duties to which, in the employer's service, he might be subsequently appointed. That object should not be defeated by any narrow interpretation of its provisions, nor by adopting a construction favorable to the company, if there be another construction equally admissible under the terms of the instrument executed for the protection of the bank." In Fidelity & Casualty Company v. Gate City National Bank (Ga.), 25 S. E., 392, 33 L. R. A., 821, 54 Am. St. Rep., 440, a bond similar to the one under consideration was executed by the Fidelity & Casualty Company to indemnify the bank against loss by reason of the fraud or dishonesty of one Lewis Redwine in connection with his duties as paying teller, "or the duties to which in the employer's service he may be subsequently assigned by the employer." After the execution of the bond, Redwine was made assistant cashier, and as such became a defaulter, causing loss to the bank in a large amount. The Supreme Court of Georgia, in discussing the liability of the guaranty company on the bond, said: "One of the questions for decision is whether or not the company was surety for him in the latter capacity [that of assistant cashier]. In view of the comprehensiveness of the above-quoted language, it would be difficult to hold it was not. He was certainly appointed subsequent to the execution of the bond to the

**874**          KENTUCKY REPORTS.          [Vol. 115

Champion Ice Mfg. & Cold Storage Co. v. Amer. Bond. & Trust Co.

office of assistant cashier, as such had duties to perform in his employer's service, and by a violation of those duties brought loss to the master. We think the plain language of the contract covers the precise state of facts which arose, and that the company is as much bound to answer to the bank for Redwine's dishonesty in the latter capacity as in the former." Under the rule announced in the case supra, it is manifest that though Weitkamp, in the application made by appellant to appellee for the bond sued on, was designated as a bookkeeper in its service, and is so entitled in the bond itself, the fact that he was intrusted by his employer with the duty of making out checks, and drawing money from the bank thereon, did not relieve appellee from liability on the bond, as, at most, the additional duty was only one that was assigned him by his employer subsequent to the execution of the bond, and was allowed by the terms of the bond itself. We are not, however, prepared to concede that the appellee would not have been liable for the dishonesty of Weitkamp in causing loss to his employer by raising the checks, and appropriating the money thereby received from the bank, even in the absence of the provision of the bond mentioned, for we incline to the opinion that the duty of making out checks and procuring money of the bank thereon, was a service that might properly and naturally have been intrusted to a bookkeeper.

It is contended by counsel for appellee that the First National Bank of Covington is liable to appellant for the sum embezzled by Weitkamp, and that it therefore has no cause of action upon the bond executed by appellee. We do not so understand the law. It is true that the relation of a bank and its depositor is that of debtor and creditor, and it is likewise true that a bank must know the signature of a depositor who draws a check upon it. We may, for the

purposes of this case, even admit the rule to be that a bank, in paying a forged or altered check, does so at its peril, and at its own loss, but we think the facts of this case present an exception to this rule. It was known to the bank's officers that Weitkamp was the bookkeeper and trusted agent of appellant, and that he was required to fill up and cash its checks, though without authority to sign them in his own name or that of his employer. In the course of their business relations with the appellant, its officers and agents, the bank officers must be presumed to have become acquainted with their handwriting and that of Weitkamp; and therefore any change of the amount of a check from appellant, appearing in the handwriting of Weitkamp, would have excited neither alarm nor suspicion in their minds, as such alteration or change would have been within the apparent scope of Weitkamp's authority; and the payment by the bank of any check altered by him, under such circumstances, would not impose any liability on the bank to reimburse appellant for the amount thereof. It is unnecessary therefore to determine what the liability of the bank to appellant would have been under other circumstances. But even though the bank were liable to appellant for the amount the checks were raised, that fact would not, in our opinion, exonerate appellee from liability. The purpose of the bond was to furnish indemnity to appellant for loss resulting from the fraud or dishonesty of Weitkamp. The position of appellee was not only that of an insurer, but that of a surety as well, and in both or either these capacities its liability is primary and direct. It would be restricting the law of both insurance and suretyship to an absurd degree to say that appellee can not be held liable until after appellant, having exhausted every other remedy, or prosecuted to insolvency any others who

might be liable, is still not reimbursed. In other words, appellee's liability does not depend upon whether appellant might collect the stolen $500 from some one else. Having a right of action against the defaulter, Weitkamp, appellant has also a right of action against the guarantor of his honesty.

It is also contended for appellee that as appellant, in answer to certain written questions propounded to it by appellee before the execution of the bond, in substance represented that Weitkamp's position in its service would only be that a bookkeeper, and that the largest amount of cash likely to be in his custody as its bookkeeper would be only a few dollars in the cash drawer, or for daily deposit, this representation amounted to a warranty, and, being false, had the effect to relieve appellee from liability on the bond. The cause of action declared on is not, in our opinion, affected by the representation in question. It was not a warranty, or so intended. Section 639, Kentucky Statutes, 1899, provides that, "all statements or descriptions in an application for a policy of insurance shall be deemed representations and not warranties; nor shall any misrepresentations, unless material or fraudulent, prevent a recovery on the policy." Viewed in the light of this statute, and of the well-known rule of elementary law that contracts of insurance are to be construed more favorably to the insured than the insurer, the answers contained in the application were not warranties; and, by the terms of the bond itself, it is apparent that they were neither fraudulent nor material. There is no averment in the answer that the bond of indemnity would not have been executed if the answers contained in the application had shown that Weitkamp would have been permitted to draw money from the banks on checks for the weekly pay-roll, nor does the

answer allege that appellee was in any way misled or deceived by appellant's answers to its written questions. They were, indeed, mere promissory representations, which, in the language of Mr. Joyce on Insurance (paragraph 190), are to be treated as "mere declarations of an unexecuted intention, and a failure to comply with such declarations is not fatal to a recovery upon a contract not induced by it."

Being of the opinion that the lower court erred in giving the peremptory instruction, as well as in the matter of refusing appellee a new trial, the judgment is reversed, and cause remanded, with directions to the lower court to set aside the verdict and judgment, and grant appellant a new trial, and for further proceedings not inconsistent with the opinion herein.

Petition for rehearing by appellee overruled.