(79 South. 667).

ILLINOIS SURETY CO. et al. v. DONALDSON. (6 Div. 431.)

(Supreme Court of Alabama. May 9, 1918. On Rehearing, June 20, 1918.)

1. INSURANCE ☞635 — ACTION ON BOND—PLEADING.

To draw up count, free from appropriate demurrer, on bond assuring employé's fidelity as to duties that had been or were to be stated during currency of bond in writing by employer to indemnitor, pleader should have incorporated allegations that attributed claimed pecuniary loss to act of larceny or embezzlement in duties defined in writings mentioned.

2. INSURANCE ☞645(2) — TERMS OF EMPLOYÉ'S BOND—RIGHT TO RECOVER.

In action on indemnity bond assuring fidelity of employé as to duties that had been or might be stated in writing by employer to indemnitor, failure to offer evidence of writings mentioned precluded any right to recover from indemnitor for loss through larceny or embezzlement by employé.

3. INSURANCE ☞2—FIDELITY OF EMPLOYÉS —NONAPPLICATION OF STATUTE — "INSURANCE CONTRACTS."

Rule of Code 1907, § 4579, is not imposed upon bonds of indemnity assuring fidelity of employés in particular service, which are not sort of "insurance contracts" meant.

4. EMBEZZLEMENT ☞11(1) — CONVERSION BY INSURANCE AGENT—RIGHT TO PART OF PREMIUM.

Insurance agent authorized to collect premiums, entitled as commission to 20 per cent. of net cash premiums actually received by him, is guilty of "embezzlement," under Code 1907, § 6828, if he fraudulently converts to his own use the whole premium.

Anderson, C. J., and McClellan, J., dissenting in part.

On Rehearing.

5. EVIDENCE ☞93—BURDEN OF PROOF—POSSESSION OF EVIDENCE.

Fact that evidence which plaintiff requires to establish obligations of contract declared on is in possession of defendant does not excuse plaintiff from proof in premises, or shift burden to defendant.

6. CONTRACTS ☞147(1)—CONSTRUCTION—INTENTION OF PARTIES.

Construction of contracts to ascertain the parties' intention is permissible only when the contract is ambiguous.

7. INSURANCE ☞146(3) — CONSTRUCTION OF BOND—UNAMBIGUITY.

If terms of indemnity or surety bond are unequivocal or unambiguous, court cannot resort to rule of construction that it will be construed most strictly against party whose officers, agents, or attorneys drew it.

8. INSURANCE ☞134(1) — RIGHT TO CONTRACT.

Indemnity company and insurance company could contract, in indemnity bond covering general agent of insurance company, that bond should secure faithful performance of his duties as they had been or should in future be stated in writing to indemnity company.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**9. BANKS AND BANKING ☞54(1)—RECEIV-
ING AND PAYING TELLER.**

The banking position or office of "receiving and paying teller" is one of distinctly recognized character and functions.

Appeal from City Court of Birmingham; John C. Pugh, Judge.

Action by Thomas B. Donaldson, receiver, etc., against the Illinois Surety Company and others. From judgment for plaintiff, defendant Surety Company appeals. Reversed and remanded.

This action is for the breach of a surety company's bond, given by appellant to the Employers' Indemnity Company. The plaintiff is Donaldson, special deputy insurance commissioner of the state of Pennsylvania, who, in virtue of his office, is in charge of the liquidation of the Employers' Indemnity Company, which formerly did business in Alabama. A. T. De Bow was the person whose fidelity the bond assured, to the amount of $5,000. From a judgment in favor of the plaintiff, based of course upon an adjudicated breach of the bond, the defendant appeals.

The presently material provisions of the bond are these:

"Whereas, A. T. De Bow, hereinafter called the 'employé' occupies the position of general agent in the service of the Employers' Indemnity Company of Philadelphia, hereinafter called the 'employer': * * *

"Now therefore, in consideration of the sum of twenty-five and no/100 dollars, paid as a premium for the period from November 1st, 1912, to November 1st, 1913, at 12 o'clock noon, and upon the faith of the said warranties of said employer as aforesaid, it is hereby agreed, that, subject to the obligations imposed by this bond on the employer, the performance of which shall be conditions precedent to the right on the part of the employer to recover under this bond, the company shall, at the expiration of three months next after proof of pecuniary loss, as hereinafter mentioned, has been given to the company, reimburse the employer, to the extent of the sum of five thousand and no/100 dollars, and no further for such pecuniary loss as the employer shall have sustained by any act of larceny or embezzlement upon the part of the employé in the performance of the duties of the office or position in the service of the employer hereinbefore referred to, as such duties have been, or may hereafter be stated in writing by the employer to the company, and occurring during the continuance of this bond, and discovered at any time within six months after the expiration or cancellation of this bond, or in case of the death, resignation or removal of the employé prior to the expiration or cancellation of the bond, within six months after such death, resignation or removal. * * *

"That the employer, on his becoming aware of any act which may be made the basis of any claim hereunder, shall, within 10 days, give the company notice thereof by telegraph at the company's expense, and in writing by a registered letter, addressed to the secretary of the company, Chicago, Illinois, and shall, within ninety days after his so becoming aware of such act as aforesaid, file with the company his itemized claim hereunder at his own cost and expense with full particulars thereof duly sworn to; and, if required, the employer shall also produce in support thereof for investigation by the company or its representative at the office of the employer all appropriate books, vouchers and evidence as may be required by the company; and this bond shall become void both as to any existing or future liabilities thereunder unless the aforesaid notice shall have been given as provided for, and unless claim is filed within the time and manner above specified, and until such books, vouchers and evidence (if required) shall have been furnished to the company for investigation as above stated, provided that no claim shall be payable hereunder that shall be filed with the company after the period of six months from the expiration or cancellation of this bond, or after a period of six months from the death, resignation or removal of the employé occurring prior or to the expiration or cancellation of this bond. Provided further that there shall be no liability on this bond for any act of larceny or embezzlement committed by the employé after the employer's first becoming aware of any act which may be made the basis of a claim hereunder. * * *

"That the employer shall, if so required by the company, duly apply for a warrant for the arrest of the employé for the act of larceny or embezzlement, which is the basis of any claim hereunder, and give all the aid and information in his power (at the cost and expense of the company), to bring the said employé to justice, or to aid the company to sue for and obtain reimbursement from the employé of his estate or third person, of moneys which the company shall have paid or become liable to pay, by virtue of this bond.

"That if without previous notice to and consent of the company thereto, in writing, the employer shall continue the employé in his employment, after having become aware of any act which may be made the basis of any claim hereunder, or make any settlement with the employé for any loss hereunder, or do any act whereby the liability of the employé to him is changed in any material respect, this bond shall be null and void, both as to any existing or future liabilities hereunder, and any willful misstatement or suppression of facts in any claim made hereunder shall render this bond void from the beginning."

The written contract under which De Bow engaged to serve the Employers' Indemnity Company contained these, among other, provisions:

"Witnesseth, that the said party of the first part hereby appoints the said party of the second part its agent, to solicit and procure applications for liability insurance, in the following territory, to wit: State of Alabama; and the said party of the second part accepts the said appointment, which is made and accepted upon the following terms and conditions to be strictly kept and observed by the parties hereto:

"(1) *The party of the first part shall not appoint any other agents in said territory to solicit and procure applications for liability insurance.*

*"The party of the second part shall represent the party of the first part solely and to the exclusion of all other persons, firms or corporations for the purpose of this agreement.*

"(2) The said party of the first part shall not be responsible for any expenses incurred by said party of the second part, in maintaining an office, in procuring applications for insurance, collecting premiums thereon, or for any other purposes whatsoever.

"(3) The said party of the second part shall receive as his sole compensation for services rendered hereunder, commissions at the rate of twenty per cent. (20%) of the net cash premiums actually received by said party of the

first part for all contracts of liability insurance and renewals thereof, written by it upon application procured by said party of the second part hereunder. * * *

"It is understood, however, that any checks to the order of the said party of the first part received by said party of the second part in payment of premiums shall be at once forwarded to the home office of said party of the first part in the city of Philadelphia; and that the said party of the second part shall have no authority to sign or indorse checks or drafts in the name of the said party of the first part.

"He shall account for, and pay over to the said party of the first part not later than the fifteenth day of each month hereafter, all premiums charged or payments, less his commissions, for contracts of insurance (both new and renewal) collected by him prior to and including the last day of the preceding month. * * *

"(6) The said party of the first part reserves the right to collect directly from the assured, any premiums which may remain due and unpaid on the fifteenth day of any month hereafter, upon the contracts written or renewals made forty-five days prior thereto, and the expense of collecting such overdue premiums shall be deducted from the commissions thereon to which said party of the second part may be entitled hereunder. * * *

"(4½) It is understood and agreed that upon insurance written as herein provided by the party of the first part, the applications for which are procured from, or through a subagent, or insurance broker regularly engaged in the business of insurance, and in consequence thereof the party of the second part is obligated to pay a portion of his commission to such subagent or insurance broker, the rate of commission to be paid hereunder to the party of the second part for all such insurance shall be twenty-five per cent. (25%), provided the party of the second part shall, upon forwarding applications to the party of the first part, advise the party of the first part in writing of the name and address of and rate of commission to be paid to the subagent or insurance broker by the party of the second part."

The grounds of demurrer referred to in the opinion are as follows:

"(A) Said count fails to show a breach of the bond in this: That it fails to aver that the Employers' Indemnity Company sustained a pecuniary loss by an act or acts of larceny or embezzlement upon the part of A. T. De Bow in the performance of the duties of the office or position in the service of the Employers' Indemnity Company as such duties have been stated in writing by the employer to this defendant.

"(2) Said count refers to a writing which is not set out hæc verba nor according to its legal effect.

"(3) Said count fails to show what duties the said A. T. De Bow was stated by plaintiff's predecessor in title to defendant, was engaged to perform.

"(6) The count shows on its face that the entire contract is not set out nor pleaded according to its legal effect.

"(7) Said count fails to show the entire contract sued on."

M. M. Ullman and A. Leo Oberdorfer, both of Birmingham, for appellant. Stokely, Scrivner & Dominick, of Birmingham, for appellees.

McCLELLAN, J. The complaint, original and as last amended, set out the bond of indemnity in hæc verba; and, after final amendment, concluded thus:

"The plaintiff avers that said Employers' Indemnity Company of Philadelphia complied with the conditions of said bond, but that the defendants failed to comply with the terms thereof in this: Said Employers' Indemnity Company of Philadelphia sustained a loss of a large amount of money, to wit, $8,621.84, by an act or acts of larceny or embezzlement committed by the principal named in said bond in the performance of the duties of the office or position in the service of Employers' Indemnity Company referred to in said bond, during the time said bond was in force, and during the time covered by said bond, of all of which facts the defendant had notice in all respects as required by said bond, and these defendants have wholly failed to reimburse the said Employers' Indemnity Company of Philadelphia, or the plaintiff, as receiver of and special deputy insurance commissioner for said company, for said loss so sustained, or any part thereof, as they bound themselves so to do in said bond."

As appears, the action is alone upon a special contract. The defendant's demurrer pointed the objection that from the face of the complaint, into which the bond was copied, it appeared that the whole contract was not disclosed; that the writings therein referred to in defining the obligation of the bond were not set out in hæc verba or according to their legal effect. The report of the appeal will reproduce grounds A, 2, 3, 6, and 7. In Ala., etc., R. R. Co. v. Nabors, 37 Ala. 489, it was held that a plaintiff cannot recover upon a special written contract the terms and conditions of which are made to depend upon another writing, without presenting the writing whereby such terms and conditions are defined. In the first and second counts, through which the plaintiff's case was there stated, the contents of the "resolutions of the board of directors," material to the definition of the obligations imported by the instruments declared on, was averred. The third and fourth counts were common counts, and declared on an account for money loaned. The question came up on the refusal to the defendant of the general affirmative charge; the court deciding that in the absence of evidence disclosing the contents of the "resolutions of the board of directors," the plaintiff could not recover. The court, with manifest correctness, there said:

"Where the existence of a special, unrescinded contract is disclosed by the evidence, the plaintiff must show its stipulations; otherwise, it is impossible to determine whether he has a right to recover. This plain principle controls the present case. The instruments executed by the secretary, on behalf of the company, showed upon their face that they did not contain the whole of the contract between the parties, but that a part of it, namely, the terms and conditions on which the loan was made, was set forth in another writing, particularly described and referred to. In the very nature of things, the right of the plaintiffs to recover must depend upon the terms and conditions of the loan; and, in the absence of proof as to what those terms and conditions were, the suit must fail. This is different from a general loan, without any special contract. In that case, the promise, and the time of repayment, would be fixed by legal implication. But no such implication arises in favor of a plaintiff who proves that there was a special contract, defining the terms and conditions of the loan, but fails to show what that contract was."

[1-3] Account was taken of the doctrine of that decision in Ala. Fid. & Cas. Co. v. Ala. Savings Bank, 76 South. 103, 107, 108,[1] where the terms of the bond were materially different from those (quoted ante) present in the bond now under consideration. In this instance the bond promised indemnity to the employer for pecuniary loss sustained by it through "any act of larceny or embezzlement upon the part of the employé in the performance of the duties of the office or position in the service of the employer hereinbefore referred to, *as such duties have been, or may hereafter be stated in writing by the employer to the company* [i. e., the indemnitor defendant]. * * *" (Italics supplied.) It is thus made manifest that the employé's fidelity the indemnitor engaged to assure was with respect to duties that had been or were to be stated during the currency of the bond in writing by the employer to the indemnitor. In the light of this unmistakable language of the bond, the obligation and liability of the indemnitor in the premises could not be ascertained and determined without appropriate reference to the thus afforded definition of the duties of the employé. Ala., etc., R. R. Co. v. Nabors, supra. In order to construct a count on this bond that would be free from appropriate demurrer, the pleader should have incorporated therein allegations that attributed the pecuniary loss claimed to an act or acts of larceny or embezzlement resulting from the *duties* defined in the writings mentioned in the bond. The amended count did aver, in terms, that the acts of larceny or embezzlement which caused the pecuniary loss claimed were with respect to the "performance of the duties of the office or position in the service" of the employer "referred to in said bond." The "office or position" mentioned in the amended complaint was that of "general agent" of the employer; thereby plainly evincing the pleader's view that the indemnity given was against acts in respect of duties relating to the office or position of general agent; whereas the terms of the bond restricted the indemnity assured to such duties as were to be stated in the writings stipulated in the bond. It might, hence, be well concluded that the amended demurrer was due to be sustained on the authority of the doctrine of the Nabors Case, supra. However, if it should be assumed that the demurrer was not as apt in its grounds as our statute (Code, § 5340) requires, or, that the amended complaint was not subject to demurrer that did not take the objection that only the pleader's conclusion was averred with respect to the *duties* in the performance of which the acts of larceny or embezzlement, causing the pecuniary loss, were committed; the failure of the plaintiff to offer evidence of the writings mentioned in the bond precluded the plaintiff's right to recover, according to the apt authority of the Nabors Case, supra; and, in consequence, it was error to refuse the general affirmative charge requested by the defendant. Against this conclusion the argument is advanced, as upon the mandate of Code, § 4579, that, since the writings mentioned in the bond were not "plainly expressed" therein, they were not a part of the contract evidenced by the bond. Allusion was made in Ala. Fid. & Cas. Co. v. Alabama Savings Bank, 76 South. 103, 107,[1] to the contention, and to some authorities cited in its support, that bonds of indemnity of the character in question were insurance contracts within the purview of the provisions of Code, § 4579. The proposition was laid aside; was not necessary to be decided on that appeal. The present consideration of the proposition, with a view to its decision, leads the court to the conclusion that the Legislature did not intend to impose the rule of that statute (Code, § 4579) upon bonds of indemnity, assuring the fidelity of employés in a particular service. Such indemnities are a sort of insurance; but not the character of insurance contracts to which the law makers had reference in enacting chapter 99, article 1, of the Code of 1907. This is made plain by the definition of insurance given in Code, § 4544, a section incorporated in article 1, with section 4579. Furthermore, the terms employed in section 4579 point to the same conclusion. Recently in Locomotive Engineers' Ins. Asso. v. Hughes, 77 South. 352,[2] this court had occasion to consider the application of this statute (section 4579) to the type of insurance contracts issued by mutual benefit associations, operated on the assessment plan purely. It was there held that the statute did not apply to such contracts.

All of the members of the court concur in the foregoing opinion and the conclusion therein announced. The court has accorded full consideration to the question, elaborately argued in the briefs whether the bond declared on prescribed and afforded an indemnity against any act on the part of the employé (De Bow) that did not constitute the crime of larceny or embezzlement; and, if the only indemnity given was against a crime or crimes of larceny or embezzlement, whether the employé (De Bow) had been guilty thereof in respect of funds derived from the sale of insurance contemplated in his contract with the Employers' Indemnity Company, De Bow's employer.

[4] The majority of the court, consisting of Justices MAYFIELD, SAYRE, SOMERVILLE, GARDNER, and THOMAS, hold as the following opinion, prepared by Justice GARDNER, discloses:

"It is insisted that an insurance agent, authorized to collect premiums for the company for which he is doing business, whose compensation is to be fixed by way of commissions at the rate of 20 per cent. of the net cash premiums actually received by the company on all contracts of insurance written by the company—procured by the agent—cannot be guilty of embezzlement, although he fraudulently converts to his own use the entire premium. This insist-

ence is based upon the proposition that the agent and the insurance company are joint owners of the premium. We think this a false premise. The entire premium until the division was made belonged to the company, and the agent was but the custodian thereof.

"The Kentucky Court of Appeals had this question for consideration, wherein the following language was used, which to our minds is unanswerable: 'The ruling of the court was based upon the idea that, as Jacobs was entitled to fifteen per cent. of the money, he was not guilty of embezzlement in using it. It will be observed that, by the contract, his compensation was to be 15 per cent. of the amount collected by him and paid over to the company. Under the contract, it was his duty to pay the whole fund over to the company; but no one can complain of that which he consented to, and, as the company consented to his taking out the 15 per cent. and paying over the 85 per cent. to it, it cannot complain of his taking out the 15 per cent., and he was guilty of no embezzlement in using the 15 per cent. But the right to use the 15 per cent. gave him no right to use the 85 per cent. The whole fund belonged to the company. It was in his hands as agent of the company. The fact that the company, to avoid circuity, allowed him to retain the 15 per cent., instead of having him pay over the whole fund to it, and for it then to return to him the 15 per cent., in no way affected the substance of the transaction. The fund was in his hands as agent of the company. He had no right to use out of the fund anything more than 15 per cent., and, when he used the entire fund, he converted to his own use the money of the company which had come into his possession as its agent.' Commonwealth v. Jacobs, 126 Ky. 536, 104 S. W. 345, 13 L. R. A. (N. S.) 511, 15 Ann. Cas. 1226.

"The following quotations are found in that opinion, which are of interest here: 'It is also claimed that, inasmuch as the defendant was entitled to a commission out of the funds collected as a compensation for his services, he was a joint owner of the money, and was not therefore an agent within the meaning of the statute. * * * Although the defendant was entitled to the percentage of the moneys collected for his services, and might have taken and retained such percentage without being guilty of embezzlement, yet the entire sum, until such division was made, belonged to his employer, and he was a mere agent and custodian. * * *' 'If an agent of a corporation authorized to carry on a business for his principal receives a commission upon the proceeds of the business, he is still a trustee for the use of his principal as to the remainder, and has in his possession property by virtue of his trust. In this case Meyer was required to send at stated intervals the amount of the receipts of the office, less his commission. These amounts, at least, he held in trust for the corporation, and it was these which constituted the subject-matter of the embezzlement.' Commonwealth v. Jacobs, supra. The note to the foregoing case clearly shows that the holding of the Kentucky court is supported by the weight of authority. The reasoning of the cases cited in support of the contrary view demonstrates, we think, that they were not well considered, and the courts delivering them contented themselves with mere statements of the propositions without discussion or argument.

"Some stress is laid on the case of Lang v. State, 97 Ala. 41, 12 South. 183, but a reading of that case will disclose that it is not at all in conflict with the conclusion here reached. There it was merely ruled that the count did not follow the statutes, and was insufficient. In commenting upon the same, however, the court clearly shows that the count was treated as showing the money was owned jointly by the defendant and another. It is therefore not an authority to the proposition that one who comes into the possession of property as the agent of another by virtue of his employment, and fraudulently converts the same to his own use, although he may be entitled to retain a commission out of the fund for services, may not be guilty of embezzlement under section 6828 of our Code.

"The conclusion reached is supported by Eggleston v. State, 129 Ala. 80, 30 South. 582, 87 Am. St. Rep. 17. The defendant in that case was selling some fruit to one Stanley, who handed him a $20 gold piece, out of which he was to take the purchase price of the fruit. It was there held, as to the $20, that he was an agent within the meaning of our Code, and could be guilty of embezzlement for the fraudulent conversion of the same, and, as was said by the court, he was a "bailee with a special property in the money." There is no distinction in principle between that case and this. There the defendant was entitled to deduct the price of his fruit from the $20 gold piece; here, the agent was authorized to receive for his compensation 20 per cent. of the premiums collected. The agent in the instant case was no more the joint owner of the entire premium than was the defendant Eggleston the joint owner of the $20 gold piece in that case. We are unable to distinguish this case from the Eggleston Case upon principle or reasoning, and it should be considered as decisive here.

"Upon the question of construction of the bond the following observations from the Supreme Court of Kentucky in the case of Champion, etc., Co. v. American Bonding & Trust Co., 115 Ky. 863, 75 S. W. 197, 103 Am. St. Rep. 356, are here in point: 'It was not necessary, in order to fix the liability of appellee upon the bond, that appellant should produce, in support of any claim that it might have arising thereunder, such proof as would convict Weitkamp of the crime of larceny or embezzlement as defined by the laws of Kentucky. Such a narrow construction of the provisions of the contract is not required by the law, and was never contemplated by the parties to it. While larceny is a common-law crime, yet in this state the punishment therefor is statutory. Embezzlement is purely a statutory crime, but the terms "larceny" and "embezzlement," in the bond or policy sued on, are used as generic terms to indicate the dishonest and fraudulent breach of any duty or obligation upon the part of an employé to pay over to his employer, or account to him for, any money, securities, or other personal property, the title to which is in the employer, that may in any manner come into the possession of the employé. * * * "The object of the bond in suit was to indemnify or insure the bank against loss arising from any act of fraud or dishonesty on the part of O'Brien in connection with his duties as cashier, or with the duties to which, in the employer's service, he might be subsequently appointed. That object should not be defeated by any narrow interpretation of its provisions."'

"The very purpose of the bond in the instant case was to protect the employer against the fraud and dishonesty of the agent in connection with his duties. It cannot for a moment be thought that the parties had in mind whether or not, by technical rule or strict construction of some criminal statute, the agent might evade the penitentiary for his offense, but the parties clearly meant that if the agent was guilty of a fraudulent conversion of the money —which in fact did not belong to him, but was that of his principal, and thereby be guilty of embezzlement in the common acceptation of that term—then liability would be fastened upon the bond. In short, our construction of the language used is that the words 'larceny' and 'embezzlement' are used in the generic terms to indicate the dishonest and fraudulent breach of duty on the part of the employé. If it be held to be the law in this state that the agent could not in fact be convicted of larceny or embezzle-

ment by the conversion of the premiums under the contract here disclosed, and if the parties contracting are held to a knowledge of the law, then their negotiations and subsequent contract were but idle ceremony and without effect.

"Our construction of the language found in the bond is that given in Champion, etc., Co. v. American Bonding & Trust Co., supra, in the following language which we here repeat: 'But the terms "larceny" and "embezzlement," in the bond or policy sued on, are used as generic terms to indicate the dishonest and fraudulent breach of any duty or obligation upon the part of an employé to pay over to his employer, or account to him for, any money, securities, or other personal property, the title to which is in the employer, that may in any manner come into the possession of the employé.'"

The writer, with whom Chief Justice ANDERSON concurs, entertains an opposite opinion, and so upon these considerations and authorities:

The bond declared on provided, in unmistakable terms, that the indemnitor's liability to the "employer" should be for and *only for* such pecuniary loss as the employer should sustain "by any *act* of larceny or embezzlement upon the part of the employé," De Bow. A breach or breaches of this bond, during the period of its assurance, could only be effected by the commission by De Bow of "an act of larceny or embezzlement." The provisions of the bond, having reference to the very subject of the assurance it undertook to afford the employer, are too plain, too unambiguous, to admit of recourse to the rule "that in the interpretation or construction of contracts of this character all fair doubts are to be resolved in favor of the party indemnified; just as it is the practice in interpreting or construing contracts of insurance." Ala. Fidelity & Casualty Co. v. Ala. Penny Savings Bank, 76 South. 103;[3] Amer. Surety Co. v. Pauly, 170 U. S. 133, 140, 18 Sup. Ct. 552, 42 L. Ed. 977; Bank v. Fidelity Co., 126 N. C. 320, 35 S. E. 588, 83 Am. St. Rep. 682, 690, 691; Id., 128 N. C. 366, 38 S. E. 908, 83 Am. St. Rep. 682. Contracts the terms of which are plain and unambiguous, and that offend no rule of law or of public policy, are beyond the reach of rules of construction, and the obligations they impose must be recognized and enforced in accordance with the thus unequivocally manifested intent of the parties. Lee v. Cochran, 157 Ala. 311, 313, 47 South. 581; 9 Cyc. pp. 577, 578, note 95; Benjamin v. McConnel, 4 Gilman (Ill.) 536, 46 Am. Dec. 474; Sanford v. Howard, 29 Ala. 684, 693, 68 Am. Dec. 101, citing Benjamin v. McConnel, supra. The terms "larceny" and "embezzlement," as employed in this bond, intend and mean acts that constitute offenses within the legal significance of those terms. On the brief for appellee the cases of Champion Ice Co. v. Amer. Bonding Co., 115 Ky. 863, 75 S. W. 197, 103 Am. St. Rep. 356, City Trust Co. of Phila. v. Lee, 204 Ill. 69, 68 N. E. 485, Monongahela Coal Co. v. Fidelity & Deposit Co. of N. Y., 94 Fed. 732, 736, 36 C. C. A. 444, as well as 19 Cyc.

p. 518, are cited as supporting the view that in actions on contracts of the character in hand it is not necessary to sustain a recovery that there should be such a larceny or embezzlement as would justify a conviction of those offenses under our criminal statutes. The text in 19 Cyc. does not support the stated contention. These decisions involved contracts with terms materially different from the very explicit terms present in the contract with which we are concerned. In those decisions there was opportunity for recourse to the rule of construction before restated. Such is not the cause under the contract here sued on.

*Embezzlement* under our laws is predicated of a *conversion,* consequent upon a possession or control resulting from a bailment. Code, §§ 6828, 6831. "Conversion is an unauthorized assumption and exercise of the right of ownership over goods or personal chattels *belonging to another,* to the alteration of their condition, or the exclusion of the owner's rights." (Italics supplied.) Noble v. State, 59 Ala. 73, 79; Eggleston v. State, 129 Ala. 80, 83, 30 South. 582, 87 Am. St. Rep. 17; Knight v. State, 152 Ala. 56, 44 South. 585; Wall v. State, 2 Ala. App. 157, 165, et seq., 56 South. 57. A person cannot be the *bailee* of his own property. Lang v. State, 97 Ala. 41, 45, 12 South. 183. One cannot be guilty of embezzling his own property. St. Clair's Case, 100 Ala. 61, 64, 14 South. 544. The statute dealt with in Lang's Case, supra, was section 4661 of the Code of 1896. Its subject, at least in major part, was the subject of section 3797 of the Code of 1886. The act approved February 28, 1889 (Acts 1888–89, pp. 68, 69) *apparently* took account of cases where the subject of the embezzlement, fraudulent conversion or fraudulent secretion of money or property, came into possession of the offender by virtue of a bailment "for the benefit" of either the "bailor or bailee"; but this court ruled, in Lang's Case, which was decided during the term 1892–93, that the act approved February 28, 1889, did not effect to constitute the offense of *embezzlement* where the defendant had an interest in the subject-matter of the misappropriation of which the defendant was charged. The annotator of section 4661 of the Code of 1896 noted, after the citation of the Lang Case, that the point was "covered by amendment," and this recital was carried forward into the annotations to section 6831 of the Code of 1907. The codification of section 4661 of the Code of 1896 did not include the particular provisions of the act approved February 28, 1889, to which this court gave consideration in the Lang Case, 97 Ala. 45, 12 South. 183. Notwithstanding the amendment made of section 4661 by the act approved February 4, 1903 (Gen. Acts 1903, pp. 40, 41), there has been no such change or amendment of the statutes as would constitute *embezzlement* the appropriation of money in

[3] 200 Ala. 337.

which the possessor (defendant) had an undivided interest. Probably the doubt expressed in the Lang Case of the power of the Legislature to enact to that effect discouraged any subsequent effort to do so. Undoubtedly the decision in the Lang Case, on the point arising on the act approved February 28, 1889, so far influenced the codification of this statute, in the Code of 1896, as to lead to the omission therefrom (Code 1896, § 4661) of the provision of that act to which particular reference was made in the opinion in the Lang Case. In view of the terms of the earlier statute (Code 1886, § 3797), of the cited act of 1889, of the codification of 1896, § 4661, and the act approved February 4, 1903, cited before, with particular reference to what was said in Lang's Case, it is clear, I think, that the lawmakers have not undertaken to constitute an *embezzlement* the misappropriation by one in possession of property or money in which he has an unseparated interest. In short, the *bailment* ("agency") referred to in the present statute has the same effect the court accorded it in Watson's Case, 70 Ala. 13, 45 Am. Rep. 70, and in Lang's Case, supra.

With exceptions not of consequence in this instance, one cannot be guilty of larceny of his own property. Black's Case, 83 Ala. 81, 83, 3 South. 814, 3 Am. St. Rep. 691; Butler's Case, 91 Ala. 87, 91, 9 South. 191. *Property* (other than that defined in Code, § 7821) jointly owned cannot be the subject of *larceny*, or kindred offenses, by one or more of such owners. 9 Mich. Dig. Ala. Rep. pp. 506, 507; Holcombe's Case, 69 Ala. 218; Kirksey v. Fike, 29 Ala. 206, 208, 209. *Larceny*, with exceptions not presently important, must be of the property *of another.*

According to the evidence, including the contract of employment set out in the statement, De Bow had a definitely prescribed undivided interest in the premiums collected by him or under his authority, as well as in the money otherwise due to the Employers' Indemnity Company under the terms of the contract. De Bow was entitled, immediately upon the payment by the insured of the premium, to take, *as his own*, therefrom an amount equal to the percentage prescribed. He was only required to make *monthly* settlements with the Employers' Indemnity Company, by the fifteenth of each month, and to keep a set of books fully disclosing the business done. Under the contract, his relation to the Employers' Indemnity Company, with respect to the balance above the percentage stipulated, was that of a *debtor* only. Under the doctrine of our Lang Case, supra, De Bow could not have committed *larceny* or *embezzlement* of the fund in which he had an unsevered, undivided interest. Such was the express holding in State v. Kent, 22 Minn. 41, 21 Am. Rep. 764, and in McElroy v. People, 202 Ill. 473, 63 N. E. 1058. In the former state, a statute was enacted

to obviate the effect of the decision in the Kent Case. State v. Herzog, 25 Minn. 490. We have no such statutory provisions in this state. In Commonwealth v. Jacobs, 126 Ky. 536, 104 S. W. 345, 13 L. R. A. (N. S.) 511, 15 Ann. Cas. 1226, it was there ruled, to quote the headnote:

"The fact that an agent is entitled to retain as his compensation a certain percentage of a fund collected for his principal does not, in case he refuses to pay over any of the fund, but uses it all for his own benefit, take the act out of the operation of a statute providing punishment for an agent who shall convert to his own use money of his principal which has come into his possession."

It affirmatively appears from the opinion (126 Ky. 536, 104 S. W. 345, 13 L. R. A. [N. S.] 514, 15 Ann. Cas. 1226) that the result thus prevailing was attained in consequence of the rule which, in that state, does not require a *strict construction* of penal statutes, whereas, it has been long established here that a *strict construction* of penal statutes must be indulged. Bettis v. Taylor, 8 Port. 564, and Postal Tel. Co. v. Lenoir, 107 Ala. 640, 644, 18 South. 266, among others. Additional illustrations of the opposing view may be found, it is claimed, in these annotations and texts: 15 Anno. Cases, pp. 1227, 1228; 87 Am. St. Rep. pp. 25, 26; 9 R. C. L. pp. 1269, 1270; note to the Jacobs Case, in 13 L. R. A. (N. S.) 511 et seq.; note, 98 Am. Dec. pp. 136, 137. A discriminative reading of many of the decisions noted in the first-cited books will disclose facts, if not statutory terminology, that render them inapt as precedents applicable to the case under consideration. The rule for a strict construction of penal statutes precludes the reading of the statutes penalizing *embezzlement* and *larceny* to include the misappropriation of funds jointly owned—funds in which the defendant has an undivided interest—much less to cover an instance where the relation between the parties concerned was one of debtor and creditor, with an obligation not to deliver the funds as collected, but to *account*, to *settle* at the end of designated monthly periods.

For the error indicated, the judgment is reversed and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD, SAYRE, SOMERVILLE, GARDNER, and THOMAS, JJ., concur.

### On Rehearing.

McCLELLAN, J. [5] The conclusion that reversible error affected the judgment was based upon the authority afforded by Ala., etc., R. R. Co. v. Nabors, 37 Ala. 489. The soundness of the doctrine of this decision has not been before brought into question. The cases of Farrall v. State, 32 Ala. 557, 559, Givens v. Tidmore, 8 Ala. 745, 750, 751, and Freeman v. Blount, 172 Ala. 655, 661, 662, 52 South. 293, in the particular to which

they are referred to in the brief in support of the application for rehearing, do not at all relate to the pertinent doctrine of the Nabors Case, supra. Those decisions considered a *rule of evidence*, namely, the obligation of a party to make proof of a *negative* averment; whereas, the Nabors Case, supra, pronounced upon the obligation of the plaintiff, who would recover in virtue of contract rights, to affirmatively prove every essential to entitle him to recover. It is not conceivable that in such actions any *essential element* of the contractual obligation, upon which the plaintiff must rely for a recovery, could be *peculiarly* within the knowledge of the defendant; rather than, as the very act of contracting (where no fraud is practiced) necessarily imports, that both of the parties to a contract, not only know the terms of the contract, but agree upon them. It may be remarked, by the way, that so far as the ability of a party to avail of appropriate evidence in actions at law to meet the burden of proof upon him is concerned, the statutes, requiring the production of certain books and writings under the adversary's control (Code, §§ 4058, 4059), and those permitting the examination of one party to the cause by another party thereto (Code, § 4049 et seq.), make adequate provision. In the present case the plaintiff filed interrogatories to the defendant under the authority of Code, § 4049, cited just above. The fact that evidence which the plaintiff requires to establish the *obligations* of the contract declared on is in the possession of the defendant does not excuse the plaintiff in the premises or shift the burden to the defendant. In Ala., etc., R. R. Co. v. Nabors, at pages 493, 494, of 37 Ala., the court advisedly pronounced:

"It will not do to say that it devolved upon the defendant, in whose possession they were, to produce the resolutions. It was for the plaintiffs to make out their case; and this they could not do without showing that the day of payment had arrived, and that the defendant was in default, and whether or not this was so depended entirely upon the terms and conditions of the loan."

The circumstance that the plaintiffs (Nabors and Gregory) also employed the common counts did not avert further application to these counts of the court's stated conclusion; for it was held that "the evidence showed the existence, but not the stipulations of the contract," a pronouncement that was accepted as authoritative in the comparatively recent decision in Lamar v. King, 168 Ala. 285, 291, 53 South. 279.

[6] It is insisted in the brief in support of the application for rehearing that a mistaken interpretation or construction of the contract sued on prevailed in the original opinion. Though a reiteration, it is not amiss to state, in the terms of the bond, that the indemnity given was against "such pecuniary loss as the employer shall have sustained by any act of larceny or embezzlement upon the part of the employé in the performance of the duties of the office or position in the service of the employer hereinbefore referred to, *as such duties have been, or may hereafter be stated in writing by the employer to the company* [i. e., the indemnitor]. * * *" (Italics supplied.) In Benjamin v. McConnel, 4 Gilman (Ill.) 536, 544, 46 Am. Dec. 474, 478, a decision approvingly cited to the like effect in Sanford v. Howard, 29 Ala. 684, 693, 68 Am. Dec. 101, it was said:

"In the construction of a contract, where the language is ambiguous, courts uniformly endeavor to ascertain the intention of the parties, and to give effect to that intention. But where the language is unequivocal, although the parties may have failed to express their real intentions, there is no room for construction, and the legal effect of the agreement must be enforced."

To the same effect is Lee v. Cochran, 157 Ala. 311, 313, 47 South. 581; 9 Cyc. pp. 577, 578, and note 95. This elementary rule of law is grounded in the nonambiguity of the terms of the contract. There is a familiar rule of construction, to be presently quoted from a high source, that is founded in the important, controlling circumstance that the contract carries ambiguous terms, and is therefore of equivocal effect. In American Surety Co. v. Pauly, 170 U. S. 133, 144, 18 Sup. Ct. 552, 556, 42 L. Ed. 977, 981, a pronouncement that was noted and applied in Ala. Fid. Co. v. Ala. Penny Savings Bank, 200 Ala. 337, 76 So. 103, 107, 108, this rule of construction was thus stated:

"If, looking at all its provisions, the bond is fairly and reasonably susceptible of two constructions, one favorable to the bank and the other favorable to the surety company, the former, if consistent with the objects for which the bond was given, must be adopted, and this for the reason that the instrument which the court is invited to interpret was drawn by the attorneys, officers, or agents of the surety company."

[7-9] If the terms of the contract are unequivocal, are unambiguous, the latterly quoted rule of construction cannot be resorted to. The terms of the bond of indemnity here sued on do not present, in the feature with which we are now concerned, a case of ambiguity, an instance where the contract, to quote the statement of the Pauly Case, "is fairly and reasonably susceptible of two constructions"; and hence that rule of construction is inapplicable. The indemnity intended was with respect to a "general agent," so named in the bond. From the terms of the bond *specifically* defining the obligation assumed thereby, it appears that the indemnitor did not intend to unrestrictedly indemnify the employer against pecuniary loss that might result to the employer from any *act* of larceny or embezzlement of its "general agent"; but, to a limited effect and that specifically stipulated, the indemnitor engaged to indemnify the employer against pecuniary loss in the performance of the duties of the general agency *as* those duties had been stated in writing by the employer

to the indemnitor, or *as* they may thereafter have been stated in writing by the employer to the indemnitor. The bond affirmed expressly that the *duties* of the "general agent" had been, when the bond became a binding obligation, defined, in writing, by the employer to the indemnitor. Recognizing the possibility that the *duties* of the "general agent" might be changed, the further provision was incorporated looking to the written statement of such changed duties by the employer to the indemnitor. The courts cannot ignore or eliminate plain provisions of an unequivocal contract that is not offensive to law or public policy. These parties had the unquestioned right to engage as they did. The indemnity bond considered in Ala. Fid. Co. v. Ala. Penny Savings Bank, 76 South. 103,[4] being materially different from the bond now under consideration, of course a different construction was taken. There the indemnity was against loss through the infidelity of a "receiving and paying teller" in a bank, a banking position or office of distinctly recognized character and functions. 1 Morse on Banking (5th Ed.) § 174; 1 Words & Phr. p. 694. There the feature of the bond which the indemnitor asserted disclosed the failure of the employer (plaintiff) to present the entire contract, within the doctrine of the Nabors Case, supra, were "statements" which should or did note the duties, etc., of the employé. As appears from the report of that appeal, the reference in the bond to the "statements" of the character described was in the *preamble* of the instrument and through the recital (in the body of the bond, but not in definition of the obligations assumed by the indemnitor as was done in the bond here sued on) that the obligations assumed by the indemnitor were accepted "upon the faith of the said statements as aforesaid by the employer." Under that bond as thus framed and phrased, the court entertained the opinion that the contract was ambiguous in this particular, and that the rule of construction satisfactorily stated in the Pauly Case, supra, could be properly invoked and applied. If the bond there declared on had *defined* the indemnitor's obligations by reference to the "state-

[4] 200 Ala. 337.

ments" mentioned in the *preamble* of that bond, manifestly a very different case would have been presented. Consequent upon the construction there given the bond, the court held it to be complete, indemnifying the employer against pecuniary loss as a result of the infidelity of its "paying and receiving teller." Having so concluded, it was further decided as upon satisfactory reason and authority that the indemnitor's assurance was not restricted to infidelity on the part of the teller in the discharge of the particular, limited duties of the office of "paying and receiving teller." The bond here sued on admits of no such liberty of interpretation or construction, because in express terms this bond restricted the obligation to acts of infidelity in the performance of duties stated in writing by the employer to the indemnitor. It cannot, of course, be assumed or presumed that the duties of the agent were not stated as the terms of the bond required. If, when the indemnitor delivered the bond, the agent's duties were not, in fact, stated as the instrument contemplated and provided, that fact may be appropriately presented, and the obligation of the bond determined as upon the contractual status made by the practical elimination of the restrictive feature of the definition of the indemnitor's obligation to the employer.

The application for rehearing is denied. All the Justices concur.